[No. E012709. Fourth Dist., Div. Two. Mar. 10, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO GARCIA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV and V.

**COUNSEL**

Jeffrey J. Stuetz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Joyce N. Burnett, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.—**

## I.

### FACTUAL BACKGROUND

In the early morning hours of August 9, 1992, Jorge Verdin Mendez (Verdin) was driving east on Ralston Street in the City of Ontario. In the car with him were Manuel Rios, Marcos Rios, and Jesus Rios.[1] As Verdin slowed down for a stop sign at the intersection of Ralston and Euclid Avenue, defendant Francisco Garcia (defendant) walked from the garage of a nearby house, down the driveway, and up to Verdin's car.

Defendant pulled out a gun. He told Verdin and the others to get out of the car, but no one in the car moved. Defendant then shot out the left rear window of the car. Manuel Rios, who was sitting in the backseat next to the window, ducked; glass fell on his head, but he was not hurt. Defendant reached into the car, turned off the ignition, and took the keys. Now everyone got out of the car. As Verdin got out, defendant kicked him in the face.

Verdin and Manuel Rios were wearing neck chains; defendant pulled the chains off, breaking them. At this point, two to four other men came down the driveway and joined defendant. One of them had a knife. The one with

---

[1] Manuel and Marcos Rios were brothers; Jesus Rios was their cousin.

the knife asked Marcos Rios for money; when Marcos said he had none, he took Marcos's hat. Defendant continued to hold the gun on the victims while one of his accomplices searched the car. Defendant then told the victims to get back in the car. He gave the keys back to Verdin and said, "Leave, get out of here."

As the car started to pull away, defendant fired three or four shots at it. Several of these shots hit the car. Verdin stepped on the gas. He turned left onto Euclid, but the pavement was wet and he lost control of the car; it crashed into a light pole. The victims jumped out of the car and ran away.

## II.

### PROCEDURAL BACKGROUND

On August 11, 1992, a petition concerning defendant was filed in juvenile court pursuant to Welfare and Institutions Code section 602. On September 3, 1992, the juvenile court found that defendant was not a fit and proper subject to be dealt with under the juvenile court law. On September 9, 1992, the juvenile court dismissed the petition and ordered that criminal proceedings against defendant be commenced.

Accordingly, on September 8, 1992, a felony complaint was filed against defendant. On September 17, defendant was held to answer. On October 1, 1992, an information was filed charging defendant as follows:[2]

Counts 1 through 3: second degree robbery (§ 211) of Verdin, Manuel Rios, and Marcos Rios, respectively.

Count 4: attempted second degree robbery (§§ 211, 664) of Jesus Rios.

Count 5: shooting at an occupied motor vehicle (§ 246).

Counts 6 through 9: assault with a firearm (§ 245, subd. (a)(2)) on Verdin, Manuel Rios, Marcos Rios, and Jesus Rios, respectively.

In connection with every count except count 5, it was alleged for sentence enhancement purposes that defendant personally used a firearm (former § 12022.5, subd. (a); amended by Stats. 1994, First Ex. Sess.1993-1994, ch. 31, § 3 [increasing upper term from five years to ten years]), and that defendant was armed with a firearm (§ 12022, subd. (a)(1)).

On December 3, 1992, following trial, a jury found defendant guilty as charged and found all enhancement allegations true.

---

[2]All statutes cited herein are from the Penal Code, unless otherwise specified.

On December 29, 1992, the trial court sentenced defendant as follows:

On count 1, robbery of Verdin: three years (the midterm), plus four years (the midterm) on the personal firearm use enhancement, to be served consecutively. Execution of sentence on the arming enhancement was stayed.

On counts 2 and 3, robbery of Manuel Rios and Marcos Rios: one year (one-third the midterm of three years) on each, to be served consecutively. Execution of sentence on both enhancements was stayed.

On count 4, attempted robbery of Jesus Rios: eight months (one-third the midterm of two years), to be served consecutively. Execution of sentence on both enhancements was stayed.

On count 5, shooting at occupied motor vehicle: one year, eight months (one-third the midterm of five years), to be served consecutively.

On count 6, assault with a firearm on Verdin: one year (one-third the midterm of three years), to be served consecutively. Execution of sentence on both enhancements was stayed.

On counts 7, 8, and 9, assault with a firearm on Manuel Rios, Marcos Rios, and Jesus Rios: three years (the midterm) on each, plus four years (the midterm) on the personal firearm use enhancement on each count, to be served concurrently. Execution of sentence on the arming enhancement on each count was stayed.

The trial court imposed a total prison term of 12 years, 4 months.

Half an hour later, however, counsel for defendant brought it to the trial court's attention that defendant had been under 18 when the crimes were committed. Accordingly, the trial court vacated the sentence it had imposed, suspended the criminal proceedings, and remanded defendant to the California Youth Authority (CYA) for an amenability report (Welf. & Inst. Code, § 707.2).

The CYA found defendant not amenable to CYA treatment and training. Accordingly, on May 6, 1993, the trial court reinstated the criminal proceedings and resentenced defendant. On count 1 and the personal firearm use enhancement thereto, instead of imposing the midterms of three and four years, the trial court imposed the upper term of five years on each. Also, whereas the first time, the trial court ran defendant's sentences on counts 7, 8, and 9 concurrently with the sentence on count 1, the second time, it stayed

execution of sentence on counts 7, 8, and 9. Otherwise, the trial court imposed the same sentence it had before. The total prison sentence was 15 years, 4 months, less credit for time served. The trial court ordered defendant housed at CYA.

Defendant filed a timely notice of appeal.

### III.

### THE TRIAL COURT'S JURISDICTION TO RESENTENCE DEFENDANT

■  Defendant contends that the trial court lacked jurisdiction to vacate its first sentence and to resentence him.

The leading case on jurisdiction to increase a prison sentence once it has been rendered is still *People* v. *Thomas* (1959) 52 Cal.2d 521 [342 P.2d 889]. There, the defendant was sentenced to six months in jail. The trial court issued a written order remanding the defendant to the custody of the sheriff "pending such further disposition as the court may order," and the sheriff transported the defendant to jail. When the clerk went to prepare the minute order, however, he realized that a prior conviction allegation had not yet been tried. He notified the judge and both counsel, then phoned the sheriff and told him to return the defendant to court. (*Id.*, at p. 536.) The trial court "rescinded" its previous sentence, found the prior conviction allegation true, and sentenced the defendant to prison. (*Id.*, at pp. 526-527.)

The Supreme Court began by noting that ". . . the jurisdictional problem, as limited by the facts, is that of the trial court's power, after rendition of judgment, to change a valid sentence so as to increase the punishment." (52 Cal.2d at p. 529, fns. omitted.)[3] It held that the trial court lost such jurisdiction once the sentence was entered in the minutes of the court, or the defendant began serving the sentence. (52 Cal.2d at pp. 529-531.) It rejected, as dictum, statements in earlier cases to the effect that the trial court might also lose jurisdiction once the defendant was restrained by the sentence. (*Id.*, at pp. 533-534.)

---

[3]The court framed the issue in terms of a "valid" sentence because a trial court may modify a "void" sentence at any time. (*People* v. *Karaman* (1992) 4 Cal.4th 335, 345, fn. 11 [14 Cal.Rptr.2d 801, 842 P.2d 100]; *People* v. *Thomas, supra,* 52 Cal.2d at p. 528; *People* v. *Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].) However, the question of whether a sentence is void in this sense, rather than merely erroneous, is difficult and highly technical. Moreover, even though here the first sentence was imposed in violation of the requirement of Welfare and Institutions Code section 707.2 that an amenability study be conducted, the People do not contend that it was void. For these reasons, we assume, without deciding, that the first sentence was valid.

The court further held that defendant Thomas had not yet begun serving his jail sentence. "A California defendant sentenced to county jail does not mechanically pass from the control of the court to the control of the executive, for the sheriff is both a ministerial officer of the court for the purpose of keeping defendant until service of sentence begins [citations] and also the executive officer who executes the jail sentence [citations]." (52 Cal.2d at pp. 531-532.) "Furthermore, under California procedure, after pronouncement of a judgment of imprisonment the sheriff continues to detain the prisoner, whether or not such officer has a copy of a paper stating that the prisoner is to be held under such judgment . . . ." (*Id.*, at p. 532.) "In the circumstances here presented we think that the sheriff, in moving defendant about the county, and into and out of the jail, under an order which authorized him 'to hold said defendant pending such further disposition as the court may order,' continued to act as an officer of the court restraining defendant for the court and did not begin to act as an executive officer carrying out execution of a sentence which had not yet been entered in the minutes." (*Id.*, at p. 533.) Thus, it concluded that the trial court properly resentenced the defendant. (*Id.*, at p. 536.)

More recently, in *People* v. *Karaman, supra,* 4 Cal.4th 335, the Supreme Court dealt with a case in which the trial court modified its sentence so as to *lessen* the punishment. In *Karaman,* the defendant was sentenced to four years in prison, including two years for a personal firearm use enhancement. This sentence was entered in the minutes; however, execution of the sentence was stayed for one week so the defendant could help his family move. (*Id.*, at p. 341.) When the week was up, however, the trial court, on its own motion, modified the sentence by striking the enhancement and sentencing the defendant to just two years in prison. (*Id.*, at pp. 341-342.)

The People argued that once the first sentence was entered in the minutes, the trial court lost jurisdiction to modify it. (*People* v. *Karaman, supra,* 4 Cal.4th at pp. 339, 343.) The Supreme Court disagreed. It accepted the holding of *Thomas* that the trial court loses jurisdiction to *increase* a prison sentence *either* upon entry of the sentence in the minutes, *or* upon execution of the sentence. (*Id.*, at p. 350.) However, it held that the trial court does *not* lose jurisdiction to *decrease* a prison sentence upon entry in the minutes; it loses such jurisdiction *only* upon execution of the sentence. (*Id.*, at pp. 339, 350-352.)

It therefore also discussed what constitutes "execution of sentence." It noted that the sentence itself is the oral pronouncement of the trial court. (*People* v. *Karaman, supra,* 4 Cal.4th at p. 344. fn. 9.) Execution of sentence, by contrast, begins when a copy of either the minute order or the abstract of judgment is delivered to the sheriff:

"The manner of executing a judgment sentencing a defendant to imprisonment is prescribed by the Penal Code. When a judgment other than death has been pronounced, and the judgment is for incarceration in a state prison, either a certified copy of the minute order or a certified abstract of the judgment 'shall be forthwith furnished to the officer whose duty it is to execute the . . . judgment, and no other warrant or authority is necessary to justify or require its execution'; the certified abstract or minute order constitutes the commitment. (§ 1213 . . . .) The commitment document is the order remanding the defendant to prison and is ' "the process and authority for carrying the judgment and sentence into effect." [Citations].' . . .

"If the judgment is for imprisonment, 'the defendant must forthwith be committed to the custody of the proper officer and by him or her detained until the judgment is complied with.' (§ 1215.) The sheriff, upon receipt of the certified abstract of judgment 'or minute order thereof,' is required to deliver the defendant to the warden of the state prison together with the certified abstract of judgment or minute order. (§ 1216.) 'It is clear then that at least upon the receipt of the abstract of the judgment by the sheriff, the execution of the judgment is in progress.' " (*People* v. *Karaman, supra,* 4 Cal.4th at pp. 344-345, fns. and citations omitted, quoting *In re Black* (1967) 66 Cal.2d 881, 890 [59 Cal.Rptr. 429, 428 P.2d 293].)

Here, the first sentence was never entered in the minutes. Thus, the question of whether the trial court lost jurisdiction to vacate the first sentence turns on whether execution of sentence had begun. Defendant points out that after the trial court imposed the first sentence, it remanded defendant into custody, as follows:

"THE COURT: . . . Anything further, before I remand?

"[PROSECUTOR]: No, your Honor.

"THE COURT: [Defense Counsel]?

"[DEFENSE COUNSEL]: No, your Honor.

"THE COURT: All right. Remand to the custody."

Under *Thomas* and *Karaman,* however, this oral pronouncement was ineffective to commence execution of the first sentence. It merely remanded defendant to the sheriff's temporary custody until such time as the court might issue a written minute order or abstract of the first sentence and deliver it to the sheriff. This, however, never happened. Defendant never

began serving the first sentence. Thus, the trial court retained jurisdiction to vacate the first sentence and to resentence him.[4]

## IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI.

### FAILURE TO STATE REASONS FOR THE INCREASED SENTENCE

When the trial court resentenced defendant, it noted that although it had previously sentenced him to 12 years and 4 months, it intended to sentence him to 15 years and 4 months. It explained: "I have reviewed all my notes of trial, I have restudied the probation report, and I just look at it at a different angle at this point."

The trial court then explained that it was imposing the upper term on count 1 and the personal firearm use enhancement thereto because "these acts perpetrated by this defendant constitute[], at least in my mind, threats of great bodily injury and in my mind also viciousness on the part of this defendant." (See Cal. Rules of Court, rule 421(a)(1) ["crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."].)[8]

Finally, the trial court explained that it was imposing consecutive sentences because it found that defendant had engaged in violent conduct

---

[4]Defendant makes much of section 1170, subdivision (d). That subdivision provides, in pertinent part: "When a defendant . . . has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own motion . . . recall the sentence and commitment previously ordered and resentence the defendant . . . *provided the new sentence, if any, is not greater than the initial sentence.*" (Italics added.) Defendant contends that the trial court had power to resentence him solely pursuant to this subdivision. For the reasons stated above, we disagree. Indeed, defendant had not been "committed to the custody of the Director of Corrections," and the trial court could not have resentenced him pursuant to this subdivision.

Defendant also contends that section 1170, subdivision (d) reflects a broader public policy against *ever* increasing a sentence. *Karaman,* however, recognized that the trial court has jurisdiction to increase a sentence, at least until the sentence is entered in the minutes or execution of the sentence begins. (*People* v. *Karaman, supra,* 4 Cal.4th at p. 350.) The court described section 1170, subdivision (d) as "a statutory exception to the common law rule that the trial court loses jurisdiction to resentence a defendant upon commencement of execution of his or her sentence." (4 Cal.4th at pp. 351-352.) A public policy that a trial court should have more time to choose to decrease a sentence than to increase one does not imply that it can never increase a sentence at all.

*See footnote, *ante,* page 1756.

[8]All rules cited herein are from the California Rules of Court.

indicating a serious danger to society, and had a prior sustained juvenile delinquency petition consisting of six counts of attempted murder. (See rules 421(b)(1) ["The defendant has engaged in violent conduct which indicates a serious danger to society"] and 421(b)(2) ["The defendant's . . . sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"]; see also rule 425(b).)

█ Defendant contends that the trial court erred by failing to explain its reasons for resentencing defendant to a longer prison term than in its first sentence.

The trial court is required to state the reasons for any "sentence choice" on the record at the time of sentencing. (§ 1170, subd. (c).) " 'Sentence choice' means the selection of any disposition of the case which does not amount to a dismissal, acquittal, or grant of a new trial." (Rule 405(f).) Typical sentence choices requiring a statement of reasons include imposing a prison term (and thereby denying probation) (rule 406(b)(2)), imposing the upper term rather than the midterm (rule 406(b)(4)), and imposing consecutive sentences (rule 406(b)(5)).

Here, the trial court stated on the record its reasons for each of these sentence choices. Defendant, however, claims that the decision to increase the sentence was, in itself, a sentence choice. The trial court's statement of reasons for imposing the second sentence, defendant would argue, did not adequately explain this choice, because the same reasons existed when it imposed the first sentence; the trial court should also have explained why those reasons justified imposing upper terms on count 1 and the related sentence enhancement the second time, even though they did not the first time.

We disagree. When the trial court resentenced defendant, it stated reasons for each of the sentence choices it made, including its choice to impose upper terms. It did not have to explain in any more detail why the resulting sentence was greater than the first sentence. The first sentence had been vacated—for good reason, as we indicated in part III, *ante.* It was a nullity. The trial court properly resentenced defendant "from scratch." The fact that the resulting sentence was greater than the vacated sentence was not a "sentence choice" requiring a statement of reasons.

When a trial court resentences a defendant after reversal on appeal, it clearly has discretion to increase or decrease elements of the sentence (although there may be limits on its ability to increase the aggregate sentence). (See generally, *People* v. *Begnaud* (1991) 235 Cal.App.3d 1548,

1556-1558 [1 Cal.Rptr.2d 507].) In such resentencing—just as in sentencing—the trial court must state reasons. We have found no case, however, holding that it must explain why its second sentence differs from its first.

For example, in *People* v. *Begnaud, supra,* 235 Cal.App.3d 1548, the trial court originally selected an assault count as the principal term, leaving a burglary count as the subordinate term. It sentenced the defendant to the midterm for the assault, and to one-third the midterm, to be served consecutively, for the burglary. The defendant appealed; the assault conviction was reversed and thereafter dismissed. On remand, the trial court imposed the upper term for the burglary. (*Id.,* at pp. 1550-1551.) The defendant again appealed, contending that the trial court failed to state adequate reasons for imposing the upper term. (*Id.,* at pp. 1551, 1558.) We held that the trial court properly relied on premeditation and on the fact that the defendant had been on parole as aggravating factors. (*Id.,* at pp. 1558-1559.) Notably, we did not require the trial court to explain why it had not used these factors to impose the upper term when it originally sentenced the defendant.

Defendant relies on *People* v. *Martin* (1986) 42 Cal.3d 437 [229 Cal.Rptr. 131, 722 P.2d 905]. There, after the trial court had sentenced the defendant, the Board of Prison Terms concluded that the sentence was disparate. It moved for resentencing under former section 1170, subdivision (f) (repealed by Stats. 1992, ch. 695, § 10; see now, § 1170, subd. (d)). (42 Cal.3d at p. 444.) The trial court refused to adjust the sentence to eliminate the asserted disparity. (*Id.,* at p. 445.) The Supreme Court reversed and remanded, holding that the trial court had failed to give the board's findings sufficient weight. (*Id.,* at pp. 445-449.)

The Supreme Court also held that on remand, the trial court should state reasons for its ruling on the motion. (42 Cal.3d at pp. 449-451.) It recognized that there was no statute requiring such a statement; thus, it exercised its own "inherent power to require a statement of reasons." (*Id.,* at p. 449.) It explained that a statement of reasons "serves a number of interests: it is frequently essential to meaningful review; it acts as an inherent guard against careless decisions, insuring that the judge himself analyzes the problem and recognizes the grounds for his decision; and it aids in preserving public confidence in the decision-making process by helping to persuade the parties and the public that the decision-making is careful, reasoned and equitable." (*Id.,* at pp. 449-450.) Finally, it rejected an argument that the trial court's original statement of reasons for imposing the sentence was sufficient. "When the trial judge originally imposed his sentence . . . he was presumably unaware of its disparate character; in stating the reasons for the sentence he would perceive no need to explain why he was imposing one

substantially more severe than those imposed in similar cases." (*Id.*, at p. 451.)

We see no similar cause to require a statement of reasons here. When the trial court resentenced defendant, it necessarily *was* aware of its first sentence. Thus, it presumably felt that its statement of reasons was adequate to explain the sentence choices which resulted in a sentence longer than the first sentence. We can review these reasons to determine whether they in fact support the trial court's sentence choices. If they do, we, the parties, and the public can feel comfortable that the sentencing decision was "careful, reasoned and equitable."

We cannot say that just because the trial court changed its mind the second sentence was somehow arbitrary or capricious. To say that sentencing decisions are discretionary is to say that different reasonable decision makers—or, as in this case, the same reasonable decision maker at different times—could arrive at different decisions, even on the same facts. So long as the decision ultimately made is supported by the reasons given for it, it is not so arbitrary and capricious as to constitute an abuse of discretion.[9] We conclude that the trial court did not have to state reasons for imposing an increased sentence as compared to the first sentence.

## VII.

### FAILURE TO STATE "ULTIMATE FACTS" CONSTITUTING AGGRAVATING CIRCUMSTANCES

Defendant contends that the trial court's statement of reasons for imposing upper terms failed to state "ultimate facts" in violation of rule 420(e).[10] He notes that one purpose for the requirement of a statement of reasons is to facilitate appellate review. (See, e.g., *People* v. *Lock* (1981) 30

---

[9]Although the trial court was not required to explain its change of mind, it stated all along that upper terms were warranted. At the first sentencing hearing, it said: "This Court can very seriously[] give aggravated terms, not only [on] the robbery, but also [on the] Use allegation . . . . I choose not to do so. [¶] I have seen many cases where guns were used in robberies, and I don't think this is out of the ordinary. [¶] On that standpoint, clearly a serious crime. But I just choose not to use aggravated. In a sense, sufficient to do so, if[,] say[,] another judge was handling [the case], or myself for that matter." Even where a trial court finds that the aggravating circumstances outweigh the mitigating circumstances, it has discretion to impose the midterm, without any explanation. (*People* v. *Myers* (1983) 148 Cal.App.3d 699, 704 [196 Cal.Rptr. 234].) That appears to be all the trial court did here.

[10]Rule 420(e) provides that: "The reasons for selecting the upper or lower term shall be stated orally on the record, and shall include a concise statement of the ultimate facts which the court deemed to constitute circumstances in aggravation or mitigation justifying the term selected."

Cal.3d 454, 459 [179 Cal.Rptr. 56, 637 P.2d 292]; *People* v. *Thomas* (1990) 218 Cal.App.3d 1477, 1489 [267 Cal.Rptr. 865].) He asserts that here it is impossible to determine whether the trial court imposed upper terms based on appropriate facts, or inappropriate facts—for example, facts that would give rise to a prohibited dual use. (See § 1170, subd. (b); rules 420(c) and (d).) Thus, he claims the statement of reasons was so conclusory as to deprive him of "meaningful review of his sentence."

Although the People recognize that defendant is making this contention, they never expressly respond to it. Evidently they consider it sufficient to argue that the trial court's stated reasons were supported by the evidence. We find that defendant's contention is substantial and deserves—even re-quires—more extended consideration. Nevertheless, in the end we reject it.

Defendant cites no case holding a statement of reasons inadequate because the reasons stated were not "ultimate facts," and we have found no such case. To the contrary, we find numerous cases in which, as here, the trial court stated its reasons for imposing the upper term by finding one or more of the aggravating circumstances listed in rule 421, and did not cite facts in support of its finding. (E.g., *People* v. *Clark* (1990) 50 Cal.3d 583, 638 [268 Cal.Rptr. 399, 789 P.2d 127]; *People* v. *Webber* (1991) 228 Cal.App.3d 1146, 1168-1169 [279 Cal.Rptr. 437]; *People* v. *Williams* (1984) 157 Cal.App.3d 145, 155-156 [203 Cal.Rptr. 562].) One sentencing "script" which is widely relied upon recommends stating reasons in this form. (Ryan, Superior Court Sentencing Script (1995) §§ 5.2-5.8.)

In *People* v. *Huber* (1986) 181 Cal.App.3d 601 [227 Cal.Rptr. 113], the trial court identified the aggravating factors it was relying on in imposing consecutive sentences by quoting them from the applicable rules. (*Id.*, at pp. 627-628.) The defendant contended "that the trial court's recitation of ultimate facts without elaboration [was] inadequate because such an ap-proach to sentencing fails to facilitate appellate review and fails to ensure careful decision making." (*Id.*, at p. 628.) The appellate court disagreed, saying, "we have been cited no case which finds error when a trial court uses the language of the rules in reciting its reasons for the sentencing choice." (*Id.*, at pp. 628-629.)[11] Similarly in *People* v. *Golliver* (1990) 219 Cal.App.3d 1612 [269 Cal.Rptr. 191], the trial court explained its decision to deny probation by paraphrasing factors from the applicable rule. (*Id.*, at pp.

---

[11]The court observed that: "A reviewing court would prefer elaboration, of course, where the applicability of a provision of the rule of court to the facts of the case is not patently obvious. For instance, where the court cites the multiple victim provision, further elaboration is not needed to facilitate appellate review. But where the court uses a criterion such as that the victim was particularly vulnerable, further elaboration would be extremely helpful in facilitating review of the trial court's decision. Here the trial court did elaborate on that factor,

1616-1617.) We stated, citing *Huber*, that ". . . there is nothing wrong with giving reasons for a sentencing choice in this manner." (*Id.*, at p. 1617.)

*Huber*, as we have mentioned, involved the imposition of consecutive sentences; *Golliver* involved the denial of probation. Under section 1170, subdivision (c), the trial court is required merely to "state the *reasons*" for these sentencing choices. (Italics added.) This case, by contrast, involves the imposition of the upper term of imprisonment. Under section 1170, subdivision (b), the trial court must "set forth on the record the *facts and reasons* for imposing the upper or lower term." (Italics added; see generally, *People* v. *Prothro* (1989) 215 Cal.App.3d 166, 170-171 [263 Cal.Rptr. 433].) In *Golliver*, we noted this distinction (*People* v. *Golliver, supra*, 219 Cal.App.3d at p. 1617), and we limited our holding to those sentence choices governed by section 1170, subdivision (c), for which only "reasons" need be stated. (219 Cal.App.3d at pp. 1617, 1620.)

The only explanation we have been able to find for why section 1170, subdivision (b) requires "facts and reasons" rather than just "reasons" "is that section 1170(b) is used for imposing an upper or lower term based on circumstances in mitigation and aggravation. The court's sentencing power is limited by the prohibition against the dual use of facts for aggravation and enhancement. [Citations.] Appellate review of alleged dual use of facts error would be far more difficult without requiring the sentencing court to explain which facts it was using for which sentencing purposes. This limitation does not apply to section 1170(c) choices." (*People* v. *Prothro, supra*, 215 Cal.App.3d at p. 171, fn. 1.)

This supposed explanation, however, does not hold up. For example, dual use limitations prohibit the imposition of consecutive sentences based on either an element of the crime (rule 425(b)(iii)), or the fact of an enhancement (rule 425(b)(ii)). Nevertheless, the choice to sentence consecutively is governed by section 1170, subdivision (c) and the trial court need only state "reasons," not "facts and reasons," for this choice. On the other hand, we know of no dual use limitations on the imposition of the *lower* term. Nevertheless, the choice to impose the lower term, as well as the upper term, is governed by section 1170, subdivision (b). The trial court must state both "facts and reasons" for this choice.

---

by specifically noting that the victims were young and were in their own homes at nighttime." (181 Cal.App.3d at p. 629.)

*Huber* thus held merely that "elaboration" is "prefer[red]" and "helpful," not that it is required. Since *Huber*, many cases have upheld an unelaborated finding that a victim was "particularly vulnerable," asking only whether this finding was supported by substantial evidence. (E.g., *People* v. *Clark, supra*, 50 Cal.3d at p. 638; *People* v. *Webber, supra*, 228 Cal.App.3d at pp. 1168-1170.)

We believe a statement of reasons for imposing an upper or lower term is not inadequate merely because it uses the language of the rules without further elaboration. In *People* v. *Mathews* (1980) 102 Cal.App.3d 704 [162 Cal.Rptr. 615], the trial court had "summarily listed circumstances in aggravation, as follows: 'The facts surrounding the commission of the instant offense indicate some degree of professionalism and premeditation. ([Cal. Rules of Court] Rule 421(a)(8).) Defendant's prior convictions, both as a juvenile and as an adult, are numerous and are of increasing seriousness. (Rule 421(b)(2).) Defendant was on parole when he committed the crime. (Rule 421(b)(4).) Defendant's past performance on probation and parole has been unsatisfactory. (Rule 421(b)(5)).' " (*Id.*, at p. 709.) The appellate court noted that this "referr[ed]—at least in general terms—to proper matters in aggravation," and concluded that "the statement of reasons for imposition of the upper term, while spare, was legally sufficient." (*Id.*, at p. 710.)

A statement of reasons in this form states "ultimate facts." "Ultimate facts" are "[f]acts which are necessary to determine issues in [a] case, as distinguished from [the] evidentiary facts supporting them," hence the "[f]acts necessary and essential for [a] decision by [a] court." (Black's Law Dict. (6th ed. 1990) p. 1522, col. a; see *Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 274 [137 Cal.Rptr. 855]; see also *People* v. *Santamaria* (1994) 8 Cal.4th 903, 921-922 [35 Cal.Rptr.2d 624, 884 P.2d 81].) In the sentencing context, the factors listed in the rules, such as that "the crime involved . . . [a] threat of great bodily harm," or "viciousness" (rule 421(a)(1)), are such "ultimate facts." We believe that if a statement of reasons includes such "ultimate facts," then it necessarily states "facts" within the meaning of section 1170, subdivision (b).

Finally, such a statement of reasons will ordinarily permit meaningful appellate review. In *People* v. *Enright* (1982) 132 Cal.App.3d 631 [183 Cal.Rptr. 249], the trial court denied probation; in its statement of reasons, it listed those factors favoring a grant of probation and those factors favoring denial of probation simply by citing the applicable portions of rule 414. Similarly, it stated its reasons for imposing the upper principal term and consecutive subordinate terms by citing the applicable rules. (132 Cal.App.3d at pp. 635-636.) The appellate court held the statement of reasons inadequate: *"Though technically the number recitation procedure used here would permit meaningful review at a later date*, it effectively deprives the parties of the opportunity to correct any misconceptions or errors at that time because the ability to do so would require ability to correlate instantaneously and accurately the rule numbers and letters to the rule language." (*Id.*, at p. 636, italics added.) Thus, *Enright* indicated that if

the statement of reasons had used the wording of the applicable rules, rather than just their numbers, it would have adequately facilitated review.

We do not believe the statement of reasons must eliminate every conceivable possibility of error. The trial court's ruling is entitled to a presumption of correctness. Although the statement of reasons is intended to facilitate "meaningful review," this means no more than that review to which defendant is entitled. For example, as we will discuss in more detail in part X, *post*, when an appellant claims the trial court made an impermissible dual use of a fact as both an enhancement and an aggravating factor (see § 1170, subd. (b)), the reviewing court looks at whether the trial court *could have* based the aggravating factor on evidence *other* than that which gave rise to the enhancement. If so, the sentence may stand. (E.g., *People* v. *Edwards* (1981) 117 Cal.App.3d 436, 445-446 [172 Cal.Rptr. 652].) If, on the other hand, the trial court could *only* have based the aggravating factor on the evidence giving rise to the enhancement, the sentence must be reversed. (E.g., *People* v. *Alvarado* (1982) 133 Cal.App.3d 1003, 1028 [184 Cal.Rptr. 483].) If the trial court's sentencing scheme and its statement of reasons therefor are supported by available, appropriate, relevant evidence, the statement of reasons need not also demonstrate that the trial court did *not* rely on inappropriate or irrelevant evidence.

Applying these standards, we find that the trial court's statement of reasons was adequate to permit us to review defendant's dual use claims and his other claims of sentencing error. We will discuss these claims seriatim.

## VIII.

### DUAL USE OF "FORCE OR FEAR" ELEMENT OF ROBBERY AS AN AGGRAVATING CIRCUMSTANCE

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Defendant argues that if the trial court based its finding of "threats of great bodily injury" on defendant's threatening conduct during the robbery (rather than on the shots he fired at Verdin's car as it sped away), then the "force or fear" element of robbery was used to impose upper terms—a prohibited dual use of fact.[12]

This argument, however, has been repeatedly rejected. (*People* v. *Reid* (1982) 133 Cal.App.3d 354, 369 [184 Cal.Rptr. 186]; *People* v. *Ramos*

---

[12]Rule 420(d) provides that "[a] fact that is an element of the crime shall not be used to impose the upper term."

(1980) 106 Cal.App.3d 591, 601-602 [165 Cal.Rptr. 179], disapproved on other grounds in *People* v. *Scott* (1994) 9 Cal.4th 331, 353, 356-357, fn. 16 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; *People* v. *Cortez* (1980) 103 Cal.App.3d 491, 496 [163 Cal.Rptr. 1].) "[T]he elements of force and fear do not need to be extreme for purposes of constituting robbery. [Citations.] [¶] This means that the threat of bodily harm can frequently exceed the minimum requirement necessary for purposes of establishing robbery." (*People* v. *Ramos, supra,* 106 Cal.App.3d at p. 602.) A threat of *great* bodily harm, such as the trial court found here, exceeds this minimum requirement by definition.

Defendant also argues that if, on the other hand, the trial court found "threats of great bodily injury" based on the shots defendant fired at Verdin's fleeing car, it also erred. The robbery was over at that point;[13] hence, it could not be said that the robbery "involved . . . threat of great bodily harm." (Rule 421(a)(1).) As we indicated in part VII, *ante,* however, the trial court is entitled to the benefit of a presumption that it relied on available relevant evidence rather than available but legally irrelevant evidence.

## IX.

### DUAL USE OF "FORCE OR FEAR" ELEMENT OF ROBBERY AS AN ENHANCEMENT

█ Defendant also claims that the "force or fear" element was based on his gun use during the robbery—particularly his use of the gun to shoot out the passenger side window—and hence an element of the crime was used to establish the personal firearm use enhancement, another prohibited dual use of fact.[14] This argument, too, however, has been repeatedly rejected. In *In re Michael L.* (1985) 39 Cal.3d 81 [216 Cal.Rptr. 140, 702 P.2d 222], the defendant was convicted of robbery, with an enhancement for personal use of a deadly or dangerous weapon (§ 12022, subd. (b)) based on his use of a knife during the robbery; he argued that this was an impermissible dual use of the "force or fear" element of robbery. The Supreme Court stated: "There is no merit to appellant's contention. The particular means by which force is employed or fear imparted is not an element of robbery." (39 Cal.3d at p. 88;

---

[13]If the robbery was still in progress, defendant contends, the imposition of unstayed sentences on the firearm use enhancement to the robbery count (count 1) and on the shooting at an occupied vehicle (count 5) would violate section 654 (see generally, pt. XII, *post*). The trial court's remarks at the first sentencing hearing, however, show that it found that the robbery was over before defendant shot at Verdin's car.

[14]Section 12022.5, subdivision (a), permits the imposition of a sentence enhancement based on the defendant's personal use of a firearm "unless use of a firearm is an element of the offense of which he or she was convicted."

accord, *In re Anthony H.* (1980) 108 Cal.App.3d 494, 499 [166 Cal.Rptr. 607].)

## X.

### DUAL USE OF FIREARM USE ENHANCEMENT AS AN AGGRAVATING CIRCUMSTANCE

■ Defendant also argues that the "threats of great bodily injury" which the trial court used as an aggravating circumstance are "but a guise" for the fact that defendant used a gun. He concludes that the trial court imposed upper terms based on facts that also formed the basis of the personal firearm use enhancement, an impermissible dual use of facts.[15]

The trial court erred only if, on these facts, its finding that defendant made "threats" necessarily was based on defendant's firearm use. (*People* v. *Coleman* (1989) 48 Cal.3d 112, 165 [255 Cal.Rptr. 813, 768 P.2d 32] [imposition of upper term based in part on threat of great bodily harm, if premised solely on presence of knife, would be impermissible dual use of deadly weapon use enhancement]; *People* v. *Alvarado, supra,* 133 Cal.App.3d at p. 1028 [imposition of upper term based in part on threat of great bodily harm was impermissible dual use of firearm use enhancement where "it was only the presence of the firearms that justified a fact finding that there was threat of great bodily harm"]; *People* v. *Bennett* (1981) 128 Cal.App.3d 354, 359 [180 Cal.Rptr. 1] [imposition of upper term based in part on threat of great bodily harm was impermissible dual use of firearm use enhancement where threat was "part and parcel of the gun use"]; *People* v. *Calhoun* (1981) 125 Cal.App.3d 731, 734 [178 Cal.Rptr. 396] [imposition of upper term based in part on threat of great bodily harm was impermissible dual use of firearm use enhancement where "Calhoun's only threat to the victim referred to his use of the gun."].)

There was substantial evidence, however, that defendant threatened the victims with great bodily injury by means distinct from his gun use.[16] Although he threatened the victims with his gun, he also kicked Verdin in the face. This was at least an implied threat to continue hitting them, and to

---

[15]Section 1170, subdivision (b), provides, in pertinent part: "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section . . . 12022.5 . . . ." (See also rule 420(c).)

[16]The People appear to concede that the trial court found "threats" based solely on defendant's use of the gun during the robbery to shoot out the car window. They do not seem to appreciate the impact this concession could have (perhaps because they do not address defendant's dual use claims at all). We do not feel the record warrants their concession, and we decline to accept it.

injure them as seriously as might be necessary to make them comply with his demands. Accordingly, the trial court was entitled to use threats of great bodily injury as an aggravating circumstance. (*People v. Edwards, supra,* 117 Cal.App.3d at pp. 445-446 [no dual use where defendant threatened victims verbally, as well as with gun]; see also *People v. Dixon* (1993) 20 Cal.App.4th 1029, 1038 [25 Cal.Rptr.2d 208].)

XI.

AGGRAVATING FACTORS USED TO IMPOSE THE UPPER TERM ON THE<br>FIREARM USE ENHANCEMENT

■ Defendant contends that the trial court's use of "threats of great bodily injury" and "viciousness" as aggravating factors in imposing the upper term on the personal firearm use enhancement was improper because these factors did not relate specifically to his use of a firearm.[17] Defendant relies on rule 428(b), which provides that: "The upper term may be imposed for an enhancement only when there are circumstances in aggravation that relate directly to the fact giving rise to the enhancement."

We construed rule 428(b) in *People v. Edwards* (1993) 13 Cal.App.4th 75 [16 Cal.Rptr.2d 572]. There, after the defendant shot his girlfriend, he pleaded guilty to assault with a firearm and admitted a personal firearm use enhancement allegation. (*Id.,* at p. 77.) The trial court sentenced the defendant to the upper term on the enhancement, based on the fact that he had been on probation at the time of the offense (see rule 421(b)(4)). (13 Cal.App.4th at p. 78.) We began by noting that "in respect to sentencing a defendant for the crime of which he was convicted, . . . rule 421[] subdivides aggravating circumstances into two categories: facts relating to the crime and facts relating to the defendant. Aggravating circumstances arising from facts relating to the crime are found in rule 421(a) and aggravating facts relating to the defendant are found in rule 421(b). [¶] We believe it is proper to analyze the meaning of 'circumstances in aggravation that relate directly to the fact giving rise to the enhancement' by applying this distinction that has been made in . . . rule 421 between facts relating to the crime and those relating to the defendant." (*Id.,* at pp. 78-79, fn. omitted.) We concluded that an aggravating factor used to impose the upper term on an enhancement "must relate to the commission of the act constituting the alleged enhancement, not to the defendant personally." (*Id.,* at p. 79.)

---

[17]Defendant does not contend that the trial court failed to state its reasons for imposing the upper term on the robbery separately from its reasons for imposing the upper term on the enhancement. We therefore have no occasion to determine whether this was error, or, if so, whether the error was harmless.

Subsequently, however, in *People* v. *Hall* (1994) 8 Cal.4th 950 [35 Cal.Rptr.2d 432, 883 P.2d 974], the Supreme Court overruled this aspect of *Edwards*. In *Hall*, the defendant was sentenced to a term which included the upper term on a personal firearm use enhancement, based on the fact that he had been on parole when the crime was committed (see rule 421(b)(4)). (8 Cal.4th at pp. 954-955.) The defendant argued that the fact that he was on parole did not relate to his use of a firearm, and therefore, under rule 428(b), could not be used as a basis for imposing the upper term. In response, the People argued that rule 428(b) was inconsistent with the Legislature's intent. (8 Cal.4th at p. 955.)

The Supreme Court agreed with the People. It held rule 428(b) invalid to the extent that it "purports to afford a sentencing court less discretion in determining whether to impose an upper term for a *sentencing enhancement* than such a court traditionally has been permitted to exercise in deciding whether to impose an upper term for a *substantive offense*." (8 Cal.4th at p. 953.) It held that because "the traditional sentencing guidelines set forth in rules 421 and 423 . . . specifically permit the court to consider, as a circumstance in aggravation, whether the defendant was on parole at the time the offense was committed, we conclude that the trial court did not err in the present case in relying upon that circumstance in aggravation." (*Id.*, at p. 964.) The Supreme Court expressly disapproved our decision in *Edwards*. (*Id.*, at p. 964, fn. 9.)

Clearly, *Hall* permits the trial court to impose the upper term on an enhancement based on factors listed in rule 421(b), i.e., facts relating to the defendant, even if those factors do not otherwise relate to the enhancement. We do not believe, however, that *Hall* permits the trial court to impose the upper term on an enhancement based on factors listed in rule 421(a), i.e., facts relating to the *crime*, if those factors do not relate to the *enhancement*. The *Hall* court reasoned that the Legislature meant the selection of the base term for an enhancement to parallel the selection of the base term for a substantive offense. (*Id.*, at pp. 959-963.) In selecting the base term for a substantive offense, however, the trial court can use facts under rule 421(a) only if they relate to that offense. *Mutatis mutandis*, in selecting the base term for an enhancement, the trial court should use facts under rule 421(a) only if they relate to that enhancement. This limitation is necessary if the two sentencing schemes are to be kept parallel.[18] Otherwise, the trial court would have *broader* discretion in sentencing on an enhancement than it has in sentencing on a substantive offense.

We therefore believe *Hall* invalidated rule 428(b), and disapproved of *Edwards*, only as applied to such facts as are listed in rule 421(b). Rule

---

[18]We suspect this was what the Judicial Council meant to accomplish in adopting rule 428(b).

428(b) and *Edwards* remain good law when applied to such facts as are listed in rule 421(a). These facts may be used to impose the upper term for an enhancement only if they relate directly to the fact giving rise to the enhancement. (See *People* v. *Zamarron* (1994) 30 Cal.App.4th 865, 870-872 [36 Cal.Rptr.2d 17] [invalidity of rule 428(b) means that in imposing upper term on personal firearm use enhancement, ". . . trial courts . . . may consider any aggravating circumstances relating to *the firearm use* and to the defendant."], italics added.)

As we discussed in part X, *ante*, if the trial court found threats of great bodily injury based solely on defendant's gun use during the robbery, this would be an improper dual use of fact. We held that the trial court avoided this dual use because its finding of threats could have been based on the kick defendant delivered to Verdin's face. Now, however, we must determine whether the kick was related directly to the gun use that formed the basis of the enhancement. We believe it was. Defendant delivered the kick while holding the gun on the occupants of the car. The threat conveyed by the kick was meant to back up the threat conveyed by the gun. Similarly, we believe the "viciousness" the trial court found related directly to the firearm use enhancement.

## XII.

### MULTIPLE PUNISHMENT FOR SHOOTING AT AN OCCUPIED MOTOR VEHICLE AND FOR ASSAULT WITH A FIREARM ON AN OCCUPANT

■ Defendant contends that imposing unstayed sentences on both count 5 (shooting at an occupied motor vehicle) and count 6 (assault with a firearm on Verdin) violated the prohibition against multiple punishment of section 654.[19]

■ "The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' [Citation.] However, because the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]

". . . [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to

---

[19]Section 654 provides, in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People* v. *Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].) If the defendant is convicted of multiple crimes incidental to a single criminal intent and objective, the trial court may avoid prohibited multiple punishment by staying execution of sentence on all but one of the convictions. (*People* v. *Pearson* (1986) 42 Cal.3d 351, 359-360 [228 Cal.Rptr. 509, 721 P.2d 595].)

However, there is a "multiple victim" exception to section 654. Under this exception, "even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim." (*People* v. *Ramos* (1982) 30 Cal.3d 553, 587 [180 Cal.Rptr. 266, 639 P.2d 908], revd. on other grounds in *California* v. *Ramos* (1983) 463 U.S. 992 [77 L.Ed.2d 1171, 103 S.Ct. 3446]; accord, *People* v. *Andrews* (1989) 49 Cal.3d 200, 225 [260 Cal.Rptr. 583, 776 P.2d 285]; *People* v. *McFarland* (1989) 47 Cal.3d 798, 803 [254 Cal.Rptr. 331, 765 P.2d 493]; *People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 20-21 [9 Cal.Rptr. 607, 357 P.2d 839].) The reason for the multiple victim exception is that "when a defendant ' "commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons," his greater culpability precludes application of section 654.' " (*McFarland, supra,* 47 Cal.3d at p. 803, quoting *Miller, supra,* 18 Cal.3d at p. 885, quoting *Neal, supra,* 55 Cal.2d at p. 20.)

A number of cases have applied section 654 to convictions both for shooting at an occupied motor vehicle and for the resulting assault on one or more of the occupants. The first of these was *People* v. *Kane* (1985) 165 Cal.App.3d 480 [211 Cal.Rptr. 628]. There, the defendant, a bar customer, quarreled with one Grigsby, the owner of the bar. Grigsby got in his car to go home, but as he drove away, the defendant shot at him. (*Id.,* at p. 484.) The defendant was convicted of assault with a deadly weapon, shooting at an occupied motor vehicle, and possession of a firearm by a felon (*id.,* at p. 483), and the trial court imposed a separate and unstayed, albeit concurrent, sentence for each offense. The defendant contended that this violated section 654. The People conceded that it did, and the appellate court agreed. (165 Cal.App.3d at p. 488.)

Next, in *People* v. *Masters* (1987) 195 Cal.App.3d 1124 [241 Cal.Rptr. 511], the defendant had a grudge against a gang to which one Bobby Hooker belonged. When the defendant spotted Hooker driving a car, with Kimberly McLean and Derrick Ross as passengers, he fired four or five shots at Hooker's car; one shot struck Ross. (*Id.*, at p. 1127.) The defendant pleaded guilty to assault on Ross with a deadly weapon and shooting at an occupied motor vehicle (*id.*, at p. 1126), and was given a separate, unstayed sentence for each. (*Id.*, at p. 1127.)

The appellate court upheld the sentencing, applying the multiple victim exception: "Masters's violation of section 245, subdivision (a)(2), and section 246, while in the same course of conduct, resulted in the commission of violent crimes against different victims. Manifestly, Derrick Ross was the unfortunate victim of Masters's assault with a deadly weapon and all three occupants of the Mustang were victims of his discharge of the firearm at the vehicle." (195 Cal.App.3d at p. 1128.) The court found *Kane* "inapplicable" because in *Kane*, "there was only one victim . . . . The same individual was the victim of both the assault with the deadly weapon and the discharge of the firearm into the occupied motor vehicle." (*Id.*, at p. 1130.)

Later cases have consistently followed *Masters*. (*People* v. *Higareda* (1994) 24 Cal.App.4th 1399, 1413 [29 Cal.Rptr.2d 763] [defendant robbed two of three people in car, then fired at car; punishment for both grossly negligent discharge of firearm and robbery upheld: third person in car "was not a robbery victim and appellant may be separately punished for endangering her by his violent crime."]; *People* v. *Gutierrez* (1992) 10 Cal.App.4th 1729, 1736-1737 [13 Cal.Rptr.2d 464] [defendant fired at car occupied by four people, striking one; punishment for both shooting at occupied motor vehicle and attempted murder upheld: ". . . the defendant's act was likely to cause harm to all four persons in the vehicle and in fact seriously injured one."]; *In re Sergio R.* (1991) 228 Cal.App.3d 588, 598 [279 Cal.Rptr. 149] [defendant fired at Blanca, Jasmine, and Melda Guevara, killing Jasmine and injuring Blanca; punishment for shooting from motor vehicle and assault with a deadly weapon upheld: "Blanca was the only victim with regard to the assault"; "[t]he discharge of a firearm from a motor vehicle finding on the other hand . . . pertained to all the victims, Blanca and Jasmine, as well as Melda Guevara, who was present but not injured"]; *People* v. *Anderson* (1990) 221 Cal.App.3d 331, 338-339 [270 Cal.Rptr. 516] [defendants shot up home, then entered it, taking property from victim Argostino, and assaulting victims Nelson and Rivera; punishment for shooting at inhabited dwelling, robbery, and assault upheld: "The victims of the shooting into an inhabited dwelling were the occupants of the residence: Argostino, Nelson, Rivera, and Pitzer. This offense, therefore, involved one victim (Pitzer) different from the victims involved in the other violent offenses."].)

Defendant urges us not to follow *Masters*, for two reasons. First, defendant claims *Masters* was wrongly decided. He begins with the premise that "section 246 necessarily contemplates more than one victim being involved in a shooting [at] an occupied 'building' or 'motor vehicle,' or 'aircraft,' due to the very nature of the[se] vehicles or structures . . . ." Thus, the punishment for a violation of section 246 adequately requites the greater culpability of a defendant who threatens multiple victims with violence. Defendant concludes that the rationale of the multiple victim exception does not apply. Quoting his major premise, however, exposes his error. Section 246 does *not* necessarily contemplate multiple victims. A building, motor vehicle, or aircraft can be "occupied" by a single person. Thus, the multiple victim exception may apply, and multiple punishment may be imposed on a defendant who shoots at a motor vehicle occupied by multiple persons.

Second, defendant appears to argue that the multiple victim exception should not apply when multiple punishment is based on the same act or omission, as opposed to an indivisible course of conduct such as in *Masters*. This is a distinction without a difference. Identical principles govern both classes of cases. (*People* v. *Hicks* (1993) 6 Cal.4th 784, 789 [25 Cal.Rptr.2d 469, 863 P.2d 714]; *People* v. *Harrison, supra,* 48 Cal.3d at p. 335.) The multiple victim exception was first announced in *Neal* v. *State of California, supra,* 55 Cal.2d 11. There, the defendant threw gasoline into the bedroom of a husband and wife, then ignited it, severely burning both. Thus, in *Neal* itself, the multiple victims were threatened by the same acts, not by distinct acts which added up to an indivisible course of conduct. Plainly the multiple victim exception applies even in "same act" cases.

Although defendant does not so argue, we have also considered another potential distinction between this case and *Masters*. In *Masters*—and in every other case we have found holding that the multiple victim exception permitted unstayed sentences both for shooting at an occupied motor vehicle (or an analogous crime) and for one or more simultaneous assaults (or analogous crimes)—there was at least one victim of the former who was not also a victim of the latter. The "leftover" victim or victims formed the basis of the separate, unstayed sentence for shooting at an occupied motor vehicle. (*People* v. *Higareda, supra,* 24 Cal.App.4th at pp. 1404, 1413; *People* v. *Gutierrez, supra,* 10 Cal.App.4th at pp. 1733, 1737; *In re Sergio R., supra,* 228 Cal.App.3d at pp. 593-594, 598; *People* v. *Anderson, supra,* 221 Cal.App.3d at pp. 334, 338-339; *People* v. *Masters, supra,* 195 Cal.App.3d at pp. 1126, 1128.) Here, by contrast, defendant was convicted of assaulting *all* the occupants of the vehicle. If we found this distinction significant, then defendant could be given an unstayed sentence for shooting at an occupied

motor vehicle, or for each of the four assaults, but not both.[20] However, we do not.

The multiple victim exception, simply stated, permits one unstayed sentence per victim of all the violent crimes the defendant commits incidental to a single criminal intent. Where one person is the victim of both a shooting at an occupied motor vehicle and a simultaneous assault, the trial court can impose an unstayed sentence for one or the other, but not for both. (*People v. Masters, supra*, 195 Cal.App.3d at p. 1130; *People v. Kane, supra*, 165 Cal.App.3d at p. 488.) We believe this is equally true where the same *persons* are the victims of a shooting at an occupied motor vehicle and of simultaneous *assaults*: the trial court can impose an unstayed sentence for the shooting, based on any given victim, or for the assault on that victim, but not for both.

We find support for this view in the case on which the *Masters* court relied, *People v. Miller* (1977) 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552]. There, the defendant, with an accomplice, robbed a jewelry store. The defendant shot Charles Burk, the security guard; he then took jewelry while his accomplice held a gun on John Keating, a salesman. (*Id.*, at pp. 878-879.) After the defendant was convicted of burglary, robbery, and assault with a deadly weapon (*id.*, at p. 877), he contended that section 654 barred punishment for each of these crimes. (*Id.*, at p. 878.)

The Supreme Court applied the multiple victim exception. (18 Cal.3d at p. 885.) It began by noting that Keating was the victim of the robbery. (*Id.*, at p. 886.) Next, it held that the burglary was a violent crime for purposes of the multiple victim exception (because it had been alleged and found to be a burglary involving the infliction of great bodily injury), and that Burk was the victim of the burglary. (*Ibid.*, see also *id.*, at pp. 882-883.) It therefore held that the defendant could be punished for both the robbery and the burglary; however, he could not be punished for both the burglary and the assault, because Burk had been the victim of both. (*Ibid.*)

What is most important in the opinion for our purposes is the following footnote: "Our conclusion that defendant may be punished for both the robbery and the burglary convictions does not depend on our earlier determination that Burk was not alleged as a victim of the robbery. Even had defendant been convicted of a robbery involving both Keating and Burk as victims, section 654 would not be applicable to preclude punishment for

---

[20]We speculate that defendant may have failed to raise this argument deliberately, because, if it succeeded, the likely result would be a remand for resentencing in which the trial court would have the option of sentencing defendant on all four assaults.

both that crime and the burglary involving Burk as a victim, as *each crime would involve at least one different victim.*" (18 Cal.3d at p. 886, fn. 11, italics added; see also *People* v. *Robinson* (1988) 198 Cal.App.3d 674, 681 [244 Cal.Rptr. 17] [sentences upheld under multiple victim exception where "each count for which the court ordered service of sentence involved 'at least one different victim[]' of a violent crime."].) Applying this footnote here, defendant was properly punished both for the crime of shooting at an occupied motor vehicle, the victims of which were Verdin and three others, and for the assault on Verdin, because each crime involved at least one different victim. No violation of section 654 appears.

## XIII.

### DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Dabney, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 31, 1995.