[No. E011268. Fourth Dist., Div. Two. Dec. 6, 1993.]

THE PEOPLE, Plaintif and Respondent, v.
SAMUEL DIXON et al., Defendants and Appellants;

[No. E011360. Fourth Dist., Div. Two. Dec. 6, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH LEE BURNS, JR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II and IV.

## COUNSEL

Handy Horiye and Roberta K. Thyfault, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, John Swan, Garrett Beaumont, Robert M. Foster and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DABNEY, Acting P. J.**—Defendants Joseph Lee Burns, Jr., and Samuel Dixon were charged in an information in counts 1 and 2 with robbery (Pen. Code, § 211),[1] in count 4 with the murder of Eric Howard (§ 187), and in count 5 with the murder of Ronnie Newt (§ 187). Dixon was also charged in count 3 with assault with a deadly weapon (§ 245). The information specially alleged as to counts 1 and 2 that Burns had used a firearm in committing the crimes (§ 12022.5) and that a principal had been armed with a firearm during the commission of the crimes (§ 12022, subd. (a)). The information specially alleged as to counts 1, 2, and 3 that Dixon had personally used a firearm in committing the crimes (§ 12022.5) and as to count 3 that Dixon had inflicted great bodily injury (§ 12022.7).

The trial court granted severance of the trials of Burns and Dixon. Burns was tried by a jury; Dixon waived his right to a jury trial and was tried by

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

the court.[2] Following the People's case-in-chief at each trial, the court granted the motions of Dixon (under § 1118) and Burns (under § 1118.1) to dismiss count 4 (the murder of Howard).

The jury found Burns guilty of the first degree murder of Newt and of both counts of robbery. The jury found true the special allegation as to each robbery count that a principal was armed with a firearm (§ 12022, subd. (a)(1)) but not true the allegation that Burns personally used a firearm (§ 12022.5).

The court sentenced Burns to a determinate sentence of seven years, consisting of the upper term of five years for the first robbery, a consecutive term of one year (one-third the middle term) for the second robbery, and a consecutive enhancement of one year for the first armed allegation. The court stayed the second armed allegation. The court imposed a consecutive term of 25 years to life for the murder conviction.

The court found Dixon guilty of the first degree murder of Newt, both counts of robbery, and assault with a deadly weapon. The court found true the special allegation as to each robbery count and as to the assault count that Dixon had personally used a firearm (§ 12022.5). The court found not true the special allegation as to the assault count that Dixon had inflicted great bodily injury.

The court sentenced Dixon to a determinate term of twelve years, consisting of the upper term of five years for the first robbery, a consecutive term of one year (one-third the middle term) for the second robbery, a consecutive term of one year (one-third the middle term) for the assault with a deadly weapon, and a consecutive upper term enhancement of five years for the use of a firearm. The court stayed the remaining enhancements for use of a firearm. The court imposed a consecutive term of 25 years to life for the murder conviction.

Burns and Dixon contend the trial court erred in denying their motions under section 1118.1 and section 1118, respectively, to dismiss count 5 because the evidence was insufficient to hold them vicariously liable for Newt's death. Burns and Dixon contend that section 654 precludes imposition of separate sentences for the murder and one of the robberies. Dixon makes the same argument with respect to the assault count. Finally, Dixon

---

[2]On our own motion, we deemed it appropriate to consolidate Burns's and Dixon's appeals, because both matters involve common issues of law and fact. (See *Primo Team, Inc.* v. *Blake Construction Co.* (1992) 3 Cal.App.4th 801, 803, fn. 1. [4 Cal.Rptr.2d 701]; *Sharick* v. *Galloway* (1936) 12 Cal.App.2d 733, 738 [55 P.2d 1196].) We therefore dispose of both matters by this single opinion. (See *Primo Team, Inc., supra,* at p. 803, fn. 1.)

contends the trial court relied on an impermissible factor in sentencing and failed to state reasons for imposing consecutive sentences.

FACTS[3]

About 1 p.m. on May 1, 1991, Jong Soo Yoo (Mr. Yoo) was working at the Mini-Mart at 180 West Rialto Avenue in San Bernardino with his wife, Hearan Yoo (Mrs. Yoo), and an employee, Sung Hyuk Im. Several customers were in the store when four men suddenly entered the store. Howard, described by Mr. Yoo as the leader of the group, pointed a handgun in the air. Howard chased Mr. Yoo to the back of the store, dragged him to the side of the store, hit him on the head with his fist, and took his watch. Howard threatened several times to kill Mr. Yoo. Howard demanded money from Mr. Yoo and hit him over the head with his gun. Mr. Yoo responded that the money was at the front of the store.

Meanwhile, two of the robbers jumped over the counter while another robber stood near the door. One of the robbers placed a gun to Mrs. Yoo's head and demanded money. Mrs. Yoo told the robbers to cool down. She opened one of the cash registers and a cash drawer. One of the robbers opened the other cash register and removed the money. The robbers took a total of about $2,000.

Mrs. Yoo told the robbers there was more money in a safe under an aisle floor in front of the counter. Howard pushed Mr. Yoo behind the counter and then walked toward the safe. The robbers continued pointing their weapons and threatened to kill the Yoos if they did not give them more money.

Mr. Yoo kept a .357 magnum revolver inside a paper bag near the cash register. Mr. Yoo knew he would be shot if he reached for the gun, but he did so anyway, because he believed the robbers did not intend to leave any witnesses. Mr. Yoo seized the gun and fired, hitting Howard. Dixon and Newt returned shots. Newt hit Mr. Yoo in the chest with one shot, and Mr. Yoo shot Newt and Burns. One of Dixon's shots hit Mr. Yoo. Dixon and Burns fled the store.

Newt died from a gunshot wound to the head. Howard died from a gunshot wound to the back of his head. He also received a nonfatal gunshot

---

[3]The evidence presented at the separate trials was substantially similar as to the events of the robbery, with the following exceptions:

At Dixon's trial, counsel stipulated as to the cause of death of Howard and Newt; at Burns's trial, the coroner testified as to his autopsy findings.

At Dixon's trial, tape recordings of Dixon's postarrest interviews with the police were played to the court.

At Burns's trial, a tape recording of Burns's postarrest interview with the police was played to the jury.

wound to his lower spine. Bullets recovered from both bodies were determined to have come from Mr. Yoo's gun. Mr. Yoo was shot in his cheek and chest. Burns was shot in his leg. The events of the robbery and shootings were recorded on the store's four surveillance cameras, and the videotape was played at both trials.

After his arrest, Burns made a statement to Detective Goggin admitting his involvement in the robbery. He told Goggin he had been in "the wrong place at the wrong time." He admitted he had entered the store and taken some money, but he said he had thrown it down after being shot. He repeatedly asserted he did not have a weapon.

After his arrest, Dixon made a statement to police officers admitting his involvement in the robbery. He stated he, Howard, Eric Lawson, Burns, and Newt had decided to go to San Bernardino to rob a store. When they arrived at the Meadowbrook Apartments, they decided to rob the Mini-Mart.

After they entered the store, Howard started hitting Mr. Yoo over the head with a handgun. Dixon got scared and started running toward the door when he heard gunshots. Dixon, Burns, and Lawson ran to their car and drove away.

In a second interview with the police officer, Dixon stated that Howard and Newt had gone into the Mini-Mart before the robbery to "make observations." During the robbery, Dixon, Howard, and Newt all carried guns. Dixon's role during the robbery was to point his gun at Mrs. Yoo and demand money. He placed something over his face so he would not be recognized because he had been in the store several times in the past.

Lawson[4] testified at Burns's trial that he had participated in the robbery along with Burns, Dixon, Howard, and Newt. The five men went to Burns's house in Pomona the morning of the robbery. Dixon mentioned committing a robbery, but they did not discuss any particular store. One of the men had talked about "hitting a lick," meaning robbing a liquor store. The men drove to San Bernardino in two cars, and arrived at the Meadowbrook Apartments shortly after noon. Newt and Howard had guns, and Lawson saw another gun in one of the cars.

Howard, Newt, and Lawson went into the Mini-Mart to buy sodas. They had not previously discussed robbing the Mini-Mart. They stayed in the store about two minutes and left. Howard changed his clothes, and Howard, Newt,

---

[4]Lawson was charged with two counts of murder and two counts of robbery. He agreed to plead guilty to one count of robbery, for which he was to be placed on probation.

Burns, and Dixon jumped over the wall between the apartment complex and the Mini-Mart. Dixon was wearing a mask. Dixon, Newt, and Howard carried guns. Lawson stayed in the parking area of the apartment complex. Lawson heard several gunshots, and he started to run. Burns and Dixon joined him. They ran to one of the cars and drove away. Burns had been shot in the leg.

DISCUSSION

I., II.\*

. . . . . . . . . . . . . . . . . . . . . . . . .

III. *Reasons for Sentencing Decisions.*

Dixon contends the court erred (1) in failing to state reasons for imposing the determinate sentence consecutive to the indeterminate sentence and (2) in using an improper reason for imposing a consecutive sentence for the robbery in count 2.

A. *Failure to State Reasons for Consecutive Sentences.*

■■■ At sentencing, the trial court stated, "The total commitment to state prison under the determinate portion of this sentence will be 12 years. [¶] As to count 5, violation of P.C. 187, murder in the first degree, the defendant is sentenced to the indeterminate period of 25 years to life. The determinate portion of this sentence is to run consecutive to the 25 to life term as imposed under count 5 as required or set forth in rule 451."[7] California Rules of Court, rule 451 (hereafter, rule 451) sets forth the manner in which the court shall proceed when imposing determinate and indeterminate terms under certain circumstances. However, the rule does not require that such terms be served consecutively. ■■ ■ ■■ The reference to rule 451 was not itself a reason for imposing consecutive terms.[8]

The People argue that no statement of reasons was required because the indeterminate term was imposed under section 1168 and the determinate

------

\*See footnote, *ante,* page 1029.

[7]California Rules of Court, rule 451(a) states, "When a defendant is sentenced under section 1170 and the sentence is to run consecutively to a sentence imposed under section 1168 in the same or another proceeding, the judgment shall specify the determinate term imposed under section 1170 computed without reference to the indeterminate sentence, shall order that the determinate term shall be served consecutive to the sentence under section 1168, and shall identify the proceedings in which the indeterminate sentence was imposed. . . ."

[8]We note that rule 451 is ambiguous and confusing to trial courts in that it appears to indicate, inconsistently with section 669, that the court should impose the determinate term to follow the indeterminate term. Section 669 requires the opposite. The statutory provision must

term was imposed under section 1170. Section 1168 does not require a statement of reasons for a sentencing choice. (See § 1170, subd. (c); *People v. Arviso* (1988) 201 Cal.App.3d 1055, 1057 [247 Cal.Rptr. 559] [no duty to state reasons for imposing two consecutive life terms under section 1168].) Here, however, Dixon was "convicted of one or more offenses punishable as a felony by a determinate sentence imposed pursuant to chapter 4.5 (commencing with § 1170) of Title 7 of Part 2 of the Penal Code." (Cal. Rules of Court, rule 403.) Thus a statement of reasons for imposing the section 1170 sentence consecutively was required, and the court erred in failing to provide its reasons in the record.

### B. *Dual Use of Sentencing Factors.*

 Dixon next contends the trial court erred in using the same factor, the use of a firearm, in imposing a five-year upper enhancement under count 1 and in imposing a consecutive sentence for count 2. At sentencing, the trial court stated, "In addition to the five years, for count 1 for the enhancement of having used a firearm, and that enhancement having been found true by the jury [*sic*], a violation of P.C. 12022.5, the court sentences Mr. Dixon to the aggravated term of five years.

"The reason for this is that it is clear from the videotape Mr. Dixon used his gun in such a way as to create genuine terror in the heart and mind of Mrs. Yoo. He had the gun stuck in her face and continued threatening or continued threatening to shoot her. So I certainly feel that under rule 421 there was a threat of great bodily harm which went beyond the normal expectations of a robbery.

"As to count 2, a violation of P.C. 211, robbery in the second degree, the defendant having been found guilty, the court imposes one third; mid-term of three years. The one-third would then be one year. And the court runs that one year consecutive to the term imposed under count 1. The reason for that consecutive sentence is found in rule 421, wherein the defendant obviously used a firearm."

The People point out that the trial court actually relied on two factors in its sentencing choices: the use of the firearm itself and the verbal threats to kill

---

prevail over the rule. Section 669 states, "Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment imposed pursuant to Section 1170, 1170.1, 667, 667.5, 667.6, 12022, 12022.2, 12022.4, 12022.5, 12022.55, 12022.6, 12022.7, 12022.75, or 12022.9, *the determinate term of imprisonment shall be served first* and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole." (Italics added.)

Mrs. Yoo. ██ A verbal threat may be used as an independent factor even when the court has relied on the weapon use to impose a sentence enhancement. (Cf. *People* v. *Davis* (1980) 103 Cal.App.3d 270, 280 [163 Cal.Rptr. 22] disapproved on another ground in *People* v. *Wolcott* (1983) 34 Cal.3d 92, 106, fn. 6 [192 Cal.Rptr. 748, 665 P.2d 520].) ██ The People fail to acknowledge, however, that the use of the firearm was the basis for the enhancement under section 12022.5, subdivision (a),[9] and the court relied on the verbal threat to impose the aggravated term of five years for the enhancement. Thus, neither the factor of the verbal threat nor the factor of the gun use was available for any other sentencing purpose. The only factor the court referred to to support the consecutive term was the factor of gun use.

██ Rule 428(b) of the California Rules of Court states, "When the defendant is subject to an enhancement that was charged and found true for which three possible terms are specified by statute, the middle term shall be imposed unless there are circumstances in aggravation or mitigation or unless, under statutory discretion, the judge strikes the additional term for the enhancement. [¶] The upper term may be imposed for an enhancement only when there are circumstances in aggravation that relate directly to the fact giving rise to the enhancement. The lower term may be imposed based upon any of the circumstances in mitigation enumerated in these rules or, under rule 408, any other reasonable circumstances in mitigation are present." (See also *People* v. *Edwards* (1993) 13 Cal.App.4th 75, 79 [16 Cal.Rptr.2d 572].) In *Edwards*, this court interpreted rule 428 as meaning that aggravated circumstances for purposes of the rule "are analogous to circumstances relating to the crime because the fact giving rise to the particular enhancement logically must relate to the commission of the act constituting the alleged enhancement, not to the defendant personally." (*Ibid.*)

Here, the threat to kill the Yoos was an act that directly related to the gun use enhancement within the meaning of rule 428(b) of the California Rules of Court. The threat was properly used as the basis for the aggravated enhancement.

██ However, the only factor relied on to impose the consecutive sentence for the robbery was the gun use. That factor served as the basis for

---

[9]Section 12022.5, subdivision (a) states, "Except as provided in subdivisions (b) and (c), any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for three, four, or five years, unless use of a firearm is an element of the offense of which he or she was convicted. The court shall order imposition of the middle term unless there are circumstances in aggravation or mitigation. The court shall state its reasons for its enhancement choice on the record at the time of sentencing."

the gun-use enhancement. It was impermissible dual use to rely on the same factor as the basis for a consecutive sentence. (§ 1170, subd. (b).)

C. *Effect of Error.*

■ We are unable to say that the error in failing to state reasons for the consecutive sentence and in using the same factor both to impose a consecutive term and to impose an aggravated enhancement was harmless. The record shows as a factor in mitigation that Dixon did not have a significant criminal record. The error therefore requires a remand for resentencing.

IV. *Constitutionality of Definition of Reasonable Doubt in CALJIC No. 2.90.**

. . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment as to defendant Burns is affirmed. The judgment as to defendant Dixon is affirmed; however, the matter is remanded for resentencing consistent with this opinion.

Hollenhorst, J., and Timlin, J., concurred.

A petiton for a rehearing was denied December 23, 1993, and appellants' petition for review by the Supreme Court was denied March 2, 1994.

---

*See footnote, *ante*, page 1029.