[No. H013258. Sixth Dist. July 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
TAN MINH TRAN et al., Defendants and Appellants.

## COUNSEL

David D. Carico and George L. Schraer, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELIA, J.**—This appeal arises out of appellants' conviction for various charges stemming from a near fatal shooting at a restaurant in a food court at a shopping center. A jury convicted appellants of conspiracy to commit first degree murder (Pen. Code, § 182, subd. (a)(1)), attempted premeditated murder (Pen. Code, §§ 664/187), second degree burglary (Pen. Code §§ 459/ 460, subd. (b)) and two counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2)). Appellant Vinh Chi Nguyen was also convicted of possession of a firearm by an ex-felon (Pen. Code, § 12021, subd. (a)). Tan Minh Tran was acquitted of shooting into an inhabited dwelling (Pen. Code, § 246). The jury also found true various arming and great bodily injury enhancements against Nguyen. It found true all the arming allegations against Tran but found not true the great bodily injury allegations against him. Both appellants were sentenced to state prison for 36 years to life.[1]

On appeal, Nguyen, joined by Tran, contends that the shooting victim's mental and physical infirmities precluded any meaningful opportunity for cross-examination and that the trial court abused its discretion in permitting this witness to testify. Tran, joined by Nguyen, contends that the convictions for conspiracy to commit first degree murder and attempted murder must be reversed for lack of substantial evidence that murder was the object of the conspiracy. Nguyen and Tran both allege several forms of sentencing error. We remand the matter for resentencing as to appellant Tran, direct the clerk to strike one enhancement as to Nguyen, and otherwise affirm.

Appellants' convictions arise out of a shooting on the evening of August 31, 1992, at the Call Me Dragon restaurant in the Lion Plaza shopping center

---

[1]In another matter, appellant Tran pleaded guilty to three counts of robbery of an inhabited dwelling house and two counts of false imprisonment, with a personal use of a firearm enhancement in connection with each of the offenses. He entered his plea on the condition that his sentence in that case run concurrently with his sentence in the case that is the subject of this appeal.

in San Jose. About 7 that night, Tuan Nguyen (Tuan) was drinking coffee in a cafe when appellant Tran, accompanied by appellant Nguyen, approached him.[2] Tran asked to borrow Tuan's brown Oldsmobile. He said he just needed it for a little while. Tuan agreed to lend Tran his car.

About an hour later, Quoc Chi Tran (Quoc) and Ahn Quang Tran (Ahn) were sitting at a table at the Call Me Dragon, eating with friends. An Asian or Vietnamese man, subsequently identified as Nguyen, approached the table. His jacket was open and his hand was at his waistband. Nguyen started speaking and called someone a name. Ahn immediately got up from the table and grabbed the arm at Nguyen's waistband. Nguyen had a pistol and pointed it at Ahn's midsection. Ahn and Nguyen struggled. As they wrestled out of the food court, Nguyen fired the pistol inside the restaurant. Quoc heard more shots. One shot hit Ahn in the head. Quoc ran to help Ahn. He saw Ahn on the ground bleeding from the head injury. Another man, later identified as appellant Tran, ran toward the restaurant with a sawed off shotgun. Quoc was struck in the upper back and neck by a shotgun blast.

A security guard at the scene heard shots and saw a man with a handgun leave the food court and walk toward the parking lot. He saw the man with the shotgun, Tran, pass him without speaking to him and move toward the food court. After pumping his shotgun in the food court area, Tran followed the same path to the parking lot. The man with the handgun got into the brown Oldsmobile. Tran was too late to get into the car and had to run for it.

Another witness saw the Oldsmobile speed around the corner about three quarters of a block from Lion Plaza. The Oldsmobile sped down the street with two wheels on the sidewalk. It stopped, and the passenger stepped out holding a handgun. He said something to the driver and stuffed his pistol into his waistband. The two men ran down a small alley which divided two medical buildings. At the same time, a third man came running from around the corner. He was yelling at the other two men. All three ran to the rear of the medical complex. This witness called the police.

Near the medical complex, the police found the brown Oldsmobile. Four of Nguyen's fingerprints were found on the car. Near the medical buildings, the police also found a .380-caliber semiautomatic handgun and a sawed-off shotgun. Spent casings recovered at the restaurant matched rounds found in the pistol and shotgun. An expert concluded that both rounds from the shotgun and the fired cartridge casings found at the scene came from the guns recovered at the medical building.

---

[2]At trial, appellants and several witnesses were referred to by their first or middle names to distinguish among those who shared common Vietnamese surnames. We will continue to do so.

Appellant Tran was found walking through a parking lot nearby. Interviewed by the police, he initially denied shooting a weapon. He said he had found a shotgun two days earlier at the plaza and had hid it under a garbage can. When he heard gunshots from inside the food court, he retrieved the shotgun and went inside the food court and shot it.

Ahn was in a coma for many months following this shooting. When he awoke, he was unable to speak. He testified at trial by tapping a pencil in response to questions, once for yes and twice for no. In this manner, he said he remembered going out one evening with Quoc. He remembered getting into a fight with a man inside a building and that the fight continued outside the building. He identified the man with whom he was fighting as appellant Nguyen.

 Appellant contends that the trial court committed reversible error in permitting Ahn Tran to testify. First, he contends that the severity of the victim's physical and mental infirmity precluded any meaningful opportunity for cross-examination in violation of appellant's rights under the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution. In a related contention, he argues that the trial court abused its discretion under Evidence Code section 352 in permitting Ahn Tran to testify.

The prosecutor informed the court that she wanted to call the victim, Ahn, as a witness. As a result of the shooting, Ahn is a quadriplegic, with extreme spasticity and freezing of his joints. He was in a coma for 18 months following the shooting when, in December of 1993, he awakened from his comatose state. His doctor considered this "unbelievable" and "quite remarkable."

When asked about the affects of Ahn's brain damage on his ability to reason, the doctor responded, "Well, I think that's a very broad process, reasoning. I think if you were to get to specifics, Mr. Tran recognizes his family and communicates with his family. And in doing so, recalls his entire life up to the time of the accident. So in that sense, you know he's got good brain function. [¶] Now, is he going to be able to, if he went to a class and . . . a book was read to him and he was asked, given a test on some comprehension for that, I don't know how he would do."

Although Ahn is unable to speak, and has a tracheotomy, he communicates by tapping for a yes or no answer, and can write in Vietnamese or English if someone assists him by moving the paper. At the time of Ahn's testimony, Ahn's doctor told the court "He is in a communicative state. I

asked him numerous questions. He was either squeezing my hand once for yes, twice for no, or tapping his board there once yes, twice no. [¶] He understands that he's here at the courthouse. He understands that he's to come in here and answer questions. I asked him if he was willing to do that. He said, 'yes.' I asked him if he was tired. He said, 'no.' "

The defense moved to disqualify the witness as incompetent and objected to being required to ask only yes or no questions. The defense also objected to the witness's testifying without a hearing outside the presence of the jury to see if he could be cross-examined, and further objected under section 352 of the Evidence Code. The court permitted the witness to testify, commenting that to refuse to do so would be "depriving [the prosecution] of the right to call a witness who appears to have at the present time sufficient ability to testify."

Before this witness testified, the court explained Ahn's physical condition to the jury and told them "as you heard the doctor testify, [Ahn] does not speak, so he's going to tap once for yes and twice for no. And counsel are going to have to word their questions to call for a yes or no answer. . . . [¶] Now, the main thing that you have to keep in mind of this is that it has been represented to me he has some testimony which the prosecution wants you to hear and that counsel are going to have to cross-examine him. And this is a lot harder for the attorneys to operate the parameters than a normal witness. Please try to evaluate his credibility within these limitations and understand the peculiar way in which he is testifying. He's not the first person to do this, nor I suspect he'll be the last."

After establishing that the Vietnamese interpreter could communicate with Ahn and could state for the record whether he was tapping once for yes and twice for no, the court permitted Ahn to be sworn as a witness. Ahn then testified by answering yes or no questions. The prosecutor established in this way that Ahn remembered the night of August 31, 1992, and that he had gone out with his friend Quoc. He did not remember the Call Me Dragon restaurant, but did remember sitting at a table in a restaurant, and getting into a fight with a man. Ahn was unarmed and he did not see a weapon with the man with whom he was fighting. He would recognize the man, who was Vietnamese. The prosecutor pointed out various Vietnamese men in the courtroom, including Vinh's codefendant, asking Ahn: "Is it this man here?" When she showed Vinh to Ahn, he answered "Yes."

On cross-examination, Ahn testified in part as follows:

"Q. Did you walk up to a table at a restaurant?

"A. Yes.

"Q. Did you go to talk to some friends who were at the restaurant?

"A. Yes.

"Q. Do you remember who the friends were that you went to talk to?

"A. Yes.

"Q. Was the man that you identified in court the same one that you went to go talk to?

"A. Yes.

"Q. Was he seated at a table eating?

"A. Yes.

"Q. And did you go over to his table?

"A. Yes.

"Q. And did you talk to him?

"A. Yes.

"Q. Do you remember what you said when you talked to him?

"A. Yes.

"Q. Did you get angry with him?

"A. No.

"Q. Did he appear to get angry with you because of something you said?

"A. Yes.

"Q. Did you then get into a fight?

"A. Yes.

"Q. Did he ever hit you?

"A. No.

"Q. Did you ever hit him?

"A. Yes.

". . . . . . . . . . . . . . . . . . . . . .

"Q. So the last thing you remember is that you hit him; is that right?

"A. Yes.

"Q. Did you hit him in the face?

"A. Yes.

"Q. Did you hit him more than one time?

"A. No.

"Q. You hit him one time; is that right?

"A. Yes.

"Q. Was your friend Quoc there when you hit the man?

"A. Yes.

"Q. Was he sitting at a table in the restaurant?

"The Interpreter: No answer, just smile.

"Q. . . . Your friend Quoc, was he sitting at the table in the restaurant?

"A. Yes."

Cross-examination continued in this manner, as the defense attorney established that Ahn never saw a gun that night and that at some point in the conversation in the restaurant Ahn became angry. After a recess to clear the witness's throat, the defense attorney had no more questions, and cocounsel and the prosecutor declined to ask any questions as well.

Following Ahn's testimony, the defense attorney moved for a mistrial. She told the court, "I feel like his testimony, the amount of information he could provide to the court and to the jury, that information was minimal compared to the prejudicial effect that it has on the jury to see that gentleman come in

on a gurney and struggle to answer questions put forth to him. [¶] I believe you denied Mr. Nguyen his Sixth Amendment rights, confront and cross-examine the witness, because I was unable to effectively cross-examine that witness since the questions had to be . . . answered yes or no."

The court and counsel commented on the very dramatic effect on the jury of seeing Ahn's physical condition as he testified from the gurney.[3] The court denied the motion for the mistrial, commenting at length on his reasoning process.

Relying primarily on *People* v. *Brock* (1985) 38 Cal.3d 180 [211 Cal.Rptr. 122, 695 P.2d 209], appellant argues that Ahn's physical and mental limitations precluded him from conducting a meaningful cross-examination. Because Ahn's physical impairments limited his answers to yes or no responses, appellant argues that he was "limited . . . to matters which were already known to the cross-examiner."

As *Brock* stated "It is axiomatic that a criminal defendant has a fundamental right to confront the witnesses against him. (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 15; Pen. Code, § 686.) It is equally well settled that the right of cross-examination is the primary interest secured by the confrontation guarantee and an essential safeguard of a fair trial. (*Pointer* v. *Texas* (1965) 380 U.S. 400, 405-407. . . ; *Douglas* v. *Alabama* (1965) 380 U.S. 415, 418-420. . . .)" (38 Cal.3d 180, 188-189.)

In *Brock* appellant alleged that the trial court had erred in admitting into evidence in a murder trial the preliminary hearing testimony of a witness who died before the trial. The witness gave her testimony from a hospital room where she had been treated for a terminal illness. The witness was under the influence of various drugs prescribed by her physicians, and the defense attorney was only able to ask three questions before the witness was unable to continue. The Supreme Court held that the trial court committed reversible error in admitting the preliminary hearing testimony at trial. The

---

[3]At counsel's request, a more detailed description of the witness was placed in the record as follows: ". . . he was on a gurney propped up in the back. He had on a pair of blue sweatpants and socks. He had some kind of a shirt covering and a huge wart on his nose. . . . [¶] He was spastic, because his legs were turned in. He did not have a seizure of spasticity while he was in court. His head drooled over—dangled over to the left, somewhat, but he did not have, that I could see, the drooling effect that the doctor had mentioned so that he was drooling. He was?

"[Defense Attorney]: I noticed the drooling, yes.

"The Court: Okay. You saw drooling. . . . [¶] He was able to communicate by tapping. During the course of the testimony, I detected a certain degree of congestion in his bronchial tube, similar to what happens when you have asthma and you are not able to get the fluids out of your throat. . . . [¶] He had a piece of plastic tubing extended from his throat."

court noted that the preliminary hearing "record clearly demonstrate[d] that by the time of the cross-examination [the witness] had become so debilitated she was incapable of participating effectively in the proceeding." (38 Cal.3d at p. 196.) The court held that ". . . the defendant was denied a meaningful opportunity for cross-examination as a result of the restrictions placed on the defense by the magistrate, and the limitations created by the witness' difficulty in communicating." (38 Cal.3d at p. 198.)

■ In this case, the limitations on appellant's cross-examination were not placed there by the court, but arose from Ahn's physical condition. Ahn was not a mentally incompetent witness; he was a physically disabled one. His limitations extended equally to his ability to communicate to the prosecution as well as the defense. Although it is difficult to cross-examine a person with Ahn's physical limitations, the court did not act to restrict counsel from cross-examining this witness. Although the court recessed to suction Ahn's tracheotomy tube during his testimony, the witness indicated he was prepared to continue answering questions. Although the court hoped to finish with the witness on the afternoon of his testimony, we are not faced with a situation in which the attorneys wished to continue with cross-examination but were prevented from doing so by the court or, as in *Brock*, by the witness's physical decline during testimony.

■ We acknowledge, as did the court in *Brock*, that "[c]ross-examination has been described as 'the "greatest legal engine ever invented for discovery of the truth." ' (*California* v. *Green* [1970] 399 U.S. [149,] 158 [26 L.Ed.2d 489, 497, 90 S.Ct. 1930].)" (38 Cal.3d at p. 197.) ■ We acknowledge that different witnesses present different challenges to the cross-examiner. A lawyer cannot expect to use the same sort of questions when cross-examining a child, a blind person, a witness who needs an interpreter, or, as here, a witness with substantial communication limitations. Undoubtedly the attorneys were frustrated at having to ask one form of question when they would have preferred to ask another type; however, this restriction was not imposed upon them by the court. Although appellant claims that the "yes or no" question format limits the cross-examiner to a repetition of the direct examination, the transcript in this case reveals that is not so. Ahn's testimony on cross-examination put the defense in a position to argue the imperfect self-defense instructions in a way that was not apparent at the conclusion of his direct testimony. The confrontation clause guarantees the opportunity to confront and cross-examine, but this does not mean that a defendant has a constitutional right to ask a particular form of question. Appellant was provided the opportunity to confront and cross-examine this witness, with no derogation of his constitutional rights.

Appellant contends that the trial court abused its discretion under Evidence Code section 352 in permitting Ahn to testify. He argues that the

limited probative value of Ahn's testimony was outweighed by the prejudicial impact of the jury seeing him on the gurney with his "gross physical abnormalities." This is novel application of section 352. The section applies to evidence, and Ahn's appearance was not admitted into evidence, his testimony was.[4]

A trial court's exercise of discretion under Evidence Code section 352 will not be reversed unless it "exceeds the bounds of reason, all of the circumstances being considered." (*People* v. *Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716].) Although it may have been distressing to the jurors to see a witness in Ahn's condition, he was able to testify concerning the events of the evening and identify the person with whom he was arguing before he was shot. Gruesome physical evidence and photographs have occasionally been excluded from evidence under section 352; appellant has not cited a case in which a witness's testimony was excluded under section 352 because of the witness's physical appearance. We cannot say that the trial court abused its discretion under Evidence Code section 352 in admitting the testimony of the victim of these crimes.

Appellant Tran contends that the conviction for conspiracy to commit first degree murder must be reversed because the record does not contain substantial evidence showing that murder was the object of the conspiracy. Specifically, appellant's contention is that "In this case the record does not contain direct evidence concerning the nature of the agreement between [the appellants]. Accordingly, as is usually the case, the agreement must be inferred from the conduct of the defendants. . . . A reasonable trier of fact properly could infer that [the appellants] went to the shopping center with criminal intentions. But it is not clear from the circumstances exactly what sort of criminal intentions they had." In a related contention, appellant Tran argues that his conviction for attempted murder must be reversed because if the record does not contain substantial evidence showing that the murder was the object of the conspiracy, necessarily the evidence also fails to show that appellant harbored an intent to kill.

"When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468].) We must " 'presume in support of the judgment the existence of every fact the trier

---

[4]Medical testimony concerning Ahn's injuries supported the great bodily injury enhancements.

could reasonably deduce from the evidence.' (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 . . . ; *People* v. *Reilly* [1970] 3 Cal.3d 421, 425.)" (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) A reasonable inference " ' " ' "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work". . . .' [¶] 'A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.' " ' " ' " (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 45 [221 Cal.Rptr. 171].) "[W]here the proven facts give equal support to two inconsistent inferences, neither is established. (*People* v. *Allen* (1985) 165 Cal.App.3d 616, 626. . . .)" (*People* v. *Brown* (1989) 216 Cal.App.3d 596, 600 [264 Cal.Rptr. 908].)

■ "The crime of conspiracy is defined in the Penal Code as 'two or more persons conspir[ing]' '[t]o commit any crime,' together with proof of the commission of an overt act 'by one or more of the parties to such an agreement' in furtherance thereof. (Pen. Code, §§ 182, subd. (a)(1), 184.) 'Conspiracy is a "specific intent" crime. . . . The specific intent required divides logically into two elements: (a) the intent to agree, or conspire, and (b) the intent to commit the offense which is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree *but also that they intended to commit the elements of that offense.*' (*People* v. *Horn* (1974) 12 Cal.3d 290, 296 . . . .)" (*People* v. *Swain* (1996) 12 Cal.4th 593, 600 [49 Cal.Rptr.2d 390, 909 P.2d 994], italics in original.)

■ Because appellants were convicted of conspiracy to commit first degree murder, we must determine whether substantial evidence supports the finding that appellants agreed to commit an intentional killing. Here the evidence is sufficient to support the jury's finding that appellants conspired to murder Ahn. Nguyen was armed with a semiautomatic handgun and Tran with a sawed-off shotgun. Together, they arranged to borrow Tuan's car for a short time. Both came to the Call Me Dragon restaurant and Nguyen entered while Tran waited outside with the shotgun. Neither made any attempt to obtain money or property from any of the patrons. With his hand inside his jacket and down at his waistband, Nguyen walked up to the table where Ahn was sitting. He pulled out the gun and pointed it at Ahn. Although Ahn resisted and a struggle ensued, Nguyen managed to shoot Ahn in the head. Tran ran toward the restaurant and fired his shotgun. Their getaway car drove up and Nguyen rode off. Tran missed the ride but ran in the same direction.

This evidence is sufficient to show that Tran and Nguyen conspired to kill Ahn. Their arrival at the restaurant, with Tran as lookout and backup, and

the swiftness with which the shooting began defeat the suggestion that a spontaneous argument resulted in the shooting. They made no attempt to rob anyone that night. Appellant's argument that this evidence supports the inference that they may have conspired to commit only a nonfatal assault is undermined by the fact that Ahn was shot in the head. This evidence applies with equal force to support the conviction for attempted murder. There was sufficient evidence to support the convictions for conspiracy as well as for attempted murder.

■ Appellant Nguyen contends that the trial court erred in sentencing him on both the firearm and great bodily injury enhancements. In sentencing appellant on the conspiracy to commit murder count, the trial court imposed both a five-year sentence for the personal use of a firearm and a three-year sentence for the great bodily injury enhancement. Respondent concedes that Penal Code section 1170.1 provides that when two or more enhancements may be imposed for a single offense, only the greatest enhancement shall apply. Appellant Nguyen's three-year sentence for the great bodily injury enhancement should be stricken.

■ Appellant Tran contends that this matter must be remanded for resentencing because the trial court failed to state reasons for imposing consecutive terms on counts 1 and 4 and for imposing an upper term for the firearm-use enhancement on count 1.[5] The trial court sentenced appellant to 36 years to life. The court sentenced appellant to 25 years to life on count 1, the conspiracy to commit first degree murder charge. The court added an upper term of five years for using a firearm during the commission of count 1. The court added three years for count 4, the assault with a firearm charge and three years for using a firearm in the commission of this count.

Appellant contends that the matter must be remanded for resentencing because the trial court failed to state reasons for imposing consecutive terms on counts 1 and 4 and for imposing an upper term for the firearm use enhancement on count 1. Respondent argues that the trial court gave adequate reasons for the consecutive sentences as well as for the aggravated term and that any error in the court's failure to state a reason was harmless because the record supports the sentencing decision and there is no reasonable possibility that Tran's sentence would be lessened on remand.

At the time of sentencing, the trial court, having just sentenced the codefendant to 36 years to life, noted that the probation department was

---

[5]Appellant did not make any objection to the sentence or to the court's alleged failure to state reasons. However, this sentencing hearing occurred two months prior to the decision in *People* v. *Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040], in which the Supreme Court held that the waiver doctrine applies to claims of this type.

recommending 39 years to life for Tran. The court told counsel, "it makes no sense to me whatsoever to sentence him to 39 years giving him a higher charge than the sentence that the codefendant just got. So I have to go back to the codefendant for just a minute, but get me to the same 36 years that Mr. Vinh got and I'll be back with you in just a minute. But I don't want to give your client more that I gave Mr. Vinh because, as bad as your client may be, he certainly should not get a higher term not being the man who did the pistol shooting as had Mr. Vinh."

The court then engaged in a discussion with counsel and the probation officer as to various ways, through aggravating or mitigating different counts, to arrive at a 36-year sentence. The court then said, "That didn't help me. I don't care how I get there, what road I take, as long as I get there. I just don't want him to have more time, in spite of the fact that this is a horrible situation. I don't see any sense in giving him more time on the, quote, murder case."

When the court finally imposed the 36-year sentence (stating "hopefully I can get there") it concluded its sentencing saying, "Mr. Tan, basically the same comments I made with regards to Mr. Vinh apply to you. You are an extremely dangerous individual, and it is my sheer hope that you never again walk free on the streets of this state, this country or any other country. [¶] Your story to the Court about how this event happened is, to be charitable, less than believable under any circumstances. . . . You are a leech on society, you're extremely dangerous and it is my strong recommendation to the Department of Corrections that you never again be released from prison. If you are, I hope that you're old enough so that you never hurt anybody else again."

The court's remarks at sentencing present two problems. First, the court appears to be reasoning backwards to justify a particular chosen length of sentence, a practice we have previously criticized as inappropriate. (See *People* v. *Fernandez* (1990) 226 Cal.App.3d 669, 684 [276 Cal.Rptr. 631].) The trial court was required to state reasons for imposing consecutive terms for a crime carrying an indeterminate term and a crime carrying a determinate term. (*People* v. *Dixon* (1993) 20 Cal.App.4th 1029, 1036-1037 [25 Cal.Rptr.2d 208].) The court must also state reasons for imposing the upper term for a firearm-use enhancement. (Pen. Code, § 12022.5, subd. (a).)

The second problem is that the court quite clearly expressed its resolve to give both appellants the same length of sentence. Because Nguyen's sentenced must be reduced by 3 years to a 33-year-to-life term, as noted above, it would be contrary to the trial court's intent were we to simply affirm

Tran's 36-year-to-life term. Thus, even if we were to sift through the court's numerous negative remarks about appellant made at the time of sentencing to supply reasons for the sentence imposed, our result could be inequitable and unjustified. The lack of stated reasons for the sentence choice and the court's expression of its intent to give both appellants the same sentence, combined with our reduction of Nguyen's sentence today, impel us to return Tran's matter to the trial court for resentencing.

█ Appellant Tran contends that the trial court erred in sentencing him in that one of the sentences for using a firearm must be stayed under Penal Code section 654. As part of his thirty-six-year-to-life sentence, Tran received a five-year enhancement for using the shotgun during the conspiracy to commit first degree murder and a consecutive three-year term for the assault with a firearm, including an additional three years for the enhancement for using the shotgun during this count. Appellant argues that, despite the fact that firearm-use allegations were added to all five counts, only one act of firearm use may be punished under section 654.

*In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], held that only one term for firearm use under Penal Code section 12022.5 could be imposed where the defendant fires several shots as part of a single melee involving one occasion, one intent, one objective and one indivisible transaction. *Culbreth* has been overruled by *People* v. *King* (1993) 5 Cal.4th 59, 79-80 [19 Cal.Rptr.2d 233, 851 P.2d 27]. However, it was not retroactive to crimes such as these committed before the decision in *King*. On remand for resentencing, the trial court may order Tran to serve only one term of imprisonment pursuant to section 12022.5.

Appellant Tran contends and respondent concedes that he had accrued 773 days of presentence custody credits, and not 733 days as the probation officer reported. On resentencing and recomputation of his credits, these calculations should be taken into account to show that Tran is entitled to 773 days of actual local time and 386 days of Penal Code section 4019 credits for a total of 1,159 days as of the time of his original sentencing.

Accordingly, the clerk of the court is directed to amend the abstract of judgment as to appellant Nguyen to strike the three-year sentence for the great bodily injury enhancement (Pen. Code, § 12022.7). As to appellant

Tran, the matter is remanded for resentencing in accordance with this opinion. The judgment is otherwise affirmed.

Premo, Acting P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied August 15, 1996, and the opinion was modified to read as printed above. Appellants' petitions for review by the Supreme Court were denied November 26, 1996.