Filed 9/6/16  P. v. Ramirez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL RAMIREZ,<br><br>    Defendant and Appellant. | F069888<br><br>(Super. Ct. No. LF008878A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Kane, J. and Poochigian, J.

## INTRODUCTION

A jury convicted appellant Daniel Ramirez of second degree robbery (Pen. Code, § 212.5, subd. (c);[1] count 1), dissuading a victim (§ 136.1, subd. (a)(1); count 2); and participating in a criminal street gang (§ 186.22, subd. (a); count 4).[2] Associated with the robbery and dissuading a victim, it was found true that appellant committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)). For all three counts, the jury found true certain firearm enhancements.

For dissuading the victim, appellant received an indeterminate prison sentence of seven years to life, enhanced by four years for the firearm. For the robbery, he received a consecutive determinate prison sentence of three years, enhanced by 10 years for the firearm. The court imposed two years in prison for his participation in a criminal street gang, which was stayed pursuant to section 654. Ten years were added to the robbery sentence for the gang enhancement, which was stayed pursuant to section 654.

On appeal, appellant raises two issues. First, he contends the trial court misunderstood the law and believed it did not have discretion to impose concurrent prison sentences. We find this argument unpersuasive. However, we find merit to his second claim that his conviction for participation in a criminal street gang must be reversed for insufficient evidence. We reverse count 4 but otherwise affirm.

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

[2] After the parties rested at trial, the defense moved for judgment of acquittal on all counts pursuant to section 1118.1. The trial court granted the motion as to count 3, which involved a separate allegation of preventing or dissuading a witness or victim (§ 136.1, subd. (a)(1)). The court denied the motion as to the remaining counts.

## FACTUAL BACKGROUND

### I. The Robbery.

On October 16, 2011, Leyda Zavaleta was in Weedpatch, California, sitting in a parked car when two men approached her. One of the men had a gun and said he would kill her if she tried to move or say anything. The second man entered the car and removed the stereo and the speakers. Two cellular phones and loose change were also taken. During the robbery, the man with the gun said if she said anything, "Weedpatch" would take care of her. Zavaleta heard the name "Danny Boy" twice during the robbery. After the items were removed from the car, the men ran away.

A sheriff's deputy responded to the scene and Zavaleta explained what happened. She described the man with the gun as bald-headed and wearing a blue and white plaid shirt. The other male wore a black shirt. She told the deputy about the name Danny Boy. The deputy testified at trial that Zavaleta said the subject in the black shirt called the other man Danny Boy. After some investigation, the deputy suspected appellant was Danny Boy. The deputy prepared a photographic lineup of possible suspects, which included appellant's photograph. The deputy showed Zavaleta the photos, and she recognized appellant's photo as the man with the gun. She was 100 percent sure. At trial, Zavaleta identified appellant as the person who robbed her using the gun. The prosecutor asked Zavaleta to read an incident report to refresh her memory, and the following occurred:

> "[Prosecutor]: Does that refresh your recall as to whether or not the individuals that robbed you made reference to Weedpatch in a way other than threatening you, if you told somebody, what would happen?
>
> "[Zavaleta]: Yes.
>
> "[Prosecutor]: What was it that you recall them saying about Weedpatch?
>
> "[Zavaleta]: That this is on Weedpatch, and they would take care of me if I say anything."

3.

Approximately one month after the robbery, Zavaleta received a phone call from two males, who identified themselves as Danny Boy and "his homie." They told her if she came to court they would show up and "handle" her and her family.

## II.    The Gang Evidence.

Mario Magana, a sheriff's deputy working in the gang suppression unit, testified at trial as the prosecution's gang expert. Magana went through his work history and knowledge of gangs. He described the gang culture in general, the distinction between the Sureño and Norteño gangs, and explained that the gang in Weedpatch was called "Weedpatch Varrio, Weedpatch 13," a Sureño gang, with a subset or clique known as "Small Town Gang." He stated the common crimes of the Weedpatch Varrios include burglaries, thefts, shootings, murders, and witness intimidation. Regarding witness intimidation, a gang member will communicate during a crime they are a member of a particular gang in order to obtain silence from the victim or any witnesses.

Magana reviewed several predicate cases which involved known Weedpatch Varrio gang members. Magana identified appellant as a Weedpatch Varrio gang member at the time of this offense. He based his opinion on appellant's tattoos, his moniker of "Danny Boy," his self-admission at booking, the location of this offense and the statements made during the offense. Magana opined that Weedpatch Varrio is a criminal street gang, and appellant and his accomplice "were furthering one another." He stated that if a person said "Weedpatch" to a victim during a crime, that indicated the Weedpatch Varrio gang participated in the crime.

Magana admitted that appellant's accomplice was never identified, but he opined this individual was also a gang member. Magana told the jury gang members will not take somebody with them to commit a violent crime if the other person is not a member of the same gang. He based this opinion on his training, experience, and talking with gang members.

4.

**DISCUSSION**

**I.     This Record Does Not Establish The Trial Court Misunderstood The Law.**

Appellant asserts the trial court misunderstood the law at sentencing and believed it did not have discretion to impose concurrent sentences. He seeks reversal and remand for resentencing.

**A.     Background.**

Prior to the sentencing hearing, appellant moved for imposition of concurrent sentences pursuant to section 669 and California Rules of Court, rule 4.425.[3] Appellant's motion contended concurrent sentences were appropriate, in part, because of appellant's young age, his lack of significant prior adult criminal history, no prior gang-related offenses, his employment, and his support from family and friends. Defense counsel generally reiterated these points at the sentencing hearing.

At the sentencing hearing, the court acknowledged receipt of appellant's written motion. After hearing argument, the court made the following statements:

> "Well, I certainly don't take lightly giving a substantial prison sentence to somebody like the defendant, who is 20 years old.
>
> "[¶] … [¶]
>
> "His criminal history at the time, he just had a juvenile conviction from '09. It looks like a juvenile case that was filed, a 243(d). He was a ward as of '09.
>
> "However, I am bound by the rule of law and the facts that were presented in the particular case, of which I have a good recollection of.
>
> "Your request is not falling on deaf ears, Mr. [defense counsel]. I certainly understand where you're coming from. I understand where Mr. [prosecutor] is coming from, as well. I appreciate both of your comments."

---

[3]     All future references to rules are to the California Rules of Court unless otherwise noted.

The court proceeded to sentence appellant. As a circumstance in mitigation, appellant completed juvenile probation without suffering a violation. For circumstances in aggravation, appellant was a danger to society based on his prior adjudication for violating section 243, subdivision (d). The court found appellant statutorily ineligible for a grant of felony probation pursuant to sections 1203, subdivision (e)(2) and 12022.53, subdivision (g). The court further noted appellant would be considered unsuitable for a grant of felony probation even if he was eligible because he participated in a gang-related robbery while armed with a firearm.

The court imposed a sentence of seven years to life on count 2, plus a four-year term for the firearm enhancement. For count 1, the trial court imposed a three-year term, plus a 10-year term for the firearm enhancement. The court stated "[t]he punishment for this count must be served fully consecutive to the sentence imposed in Count 2, as determinate and indeterminate terms do not mix." The court announced a total prison sentence of seven years to life, plus a determinate term of 17 years.

Regarding count 1, the probation report stated: "The punishment for this Count must be served fully consecutive to the sentence imposed in Count Two as determinate and indeterminate terms do not mix in any manner."

B. **Standard of review.**

A trial court's sentencing decisions are reviewed for an abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A trial court must exercise its discretion in a manner that is not arbitrary or capricious, following the letter and spirit of the law, and based upon individualized considerations of the offense, the defendant, and the public interest. (*Ibid.*) The defendant bears the burden to show the sentencing decision was irrational or arbitrary. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) Without a showing of abuse, we presume a trial court acted to achieve legitimate sentencing objectives. (*Ibid.*)

## C. Analysis.

Appellant argues the trial court erroneously believed it did not have discretion to impose concurrent sentences. He maintains the court indicated this belief on the record, and he focuses on the judge's statement that punishment for count 1 "must be served fully consecutive to the sentence imposed in Count 2, as determinate and indeterminate terms do not mix." He also contends the judge read verbatim from the probation report, asserting the probation report incorrectly stated the law. He argues his case must be remanded so the trial court can exercise its discretion to impose a concurrent or consecutive sentence. We disagree.

When a person is convicted of two or more crimes, including both determinate and indeterminate terms, a trial court is to impose either concurrent or consecutive sentences. (§ 669, subd. (a); *In re Maes* (2010) 185 Cal.App.4th 1094, 1099.)

Rule 4.425 sets forth criteria affecting the decision to impose consecutive rather than concurrent sentences. Regarding the crimes, these factors include whether: (1) the crimes and their objectives were predominately independent of each other; (2) the crimes involved separate acts or threats of violence; or (3) the crimes were committed at different times and separate places or were so closely committed as to indicate a single period of aberrant behavior. (Rule 4.425, subd. (a)(1)-(3).) Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive versus concurrent sentences. However, a trial court may not consider a fact used to impose the upper term, a fact used to otherwise enhance the prison sentence, or a fact that is an element of the crime. (Rule 4.425, subd. (b)(1)-(3).)

Here, the trial court acknowledged receipt of appellant's motion seeking imposition of concurrent sentences pursuant to section 669 and rule 4.425. The judge acknowledged defense counsel's arguments, stating the request was "not falling on deaf ears" and he understood where defense counsel was "coming from." At no time did the trial court indicate it lacked discretionary authority to grant appellant's request. The

7.

judge noted he had a "good recollection" of the facts of the case, and he felt "bound by the rule of law" to impose the sentence. We presume the trial court knew the applicable law and followed it. (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517.)

We are unpersuaded the statement that count 1 "must be served fully consecutive to the sentence imposed in Count 2, as determinate and indeterminate terms do not mix" indicated a lack of sentencing discretion. To the contrary, this was a correct statement of the law because a determinate sentence must be served before any indeterminate sentence, and no part of the determinate sentence may be credited toward the defendant's eligibility for parole. (§ 669, subd. (a); *People v. Dixon* (1993) 20 Cal.App.4th 1029, 1036-1037, fn. 8.)

We do not glean from this record that the trial court did not understand its discretionary authority to impose consecutive versus concurrent sentences. We cannot say that the trial court exercised its discretion in a manner that was capricious. Appellant has not met his burden of showing the sentencing decision was irrational or arbitrary. Accordingly, reversal is not required for this issue.

## II.    The Conviction In Count 4 Is Based On Insufficient Evidence.

Appellant contends his conviction for participation in a criminal street gang must be reversed for failure to establish the offense was committed with a member of his gang. He seeks reversal of count 4.

### A.    Standard of review.

Our review of the sufficiency of the evidence is deferential. We examine the whole record in the light most favorable to the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We must determine if there is evidence of reasonable, credible and solid value to support the judgment so that a reasonable jury could have found the defendant guilty beyond a reasonable doubt. (*Ibid.*) This same standard is used to review convictions based upon circumstantial evidence. (*Ibid.*) If the circumstances reasonably

justify the jury's findings, we will not reverse the judgment if the circumstances could also reasonably be reconciled with a contrary finding.  (*Id.* at p. 1054.)

## B. Analysis.

Appellant argues his accomplice was never identified and he contends Magana improperly speculated this second individual was a gang member.  He seeks reversal of his conviction in count 4, claiming he cannot be convicted of participation in a criminal street gang under section 186.22, subdivision (a), without evidence he acted with a member of his own gang.  He relies principally on *People v. Velasco* (2015) 235 Cal.App.4th 66 (*Velasco*).

Respondent asserts substantial evidence exists to support count 4.  The accomplice referred to appellant by his gang moniker "Danny Boy" during the robbery, which respondent contends "permits a reasonable inference the accomplice was also a Varrio Weedpatch [*sic*] member, because members' monikers are particular to each gang and known throughout the organization."  Respondent further argues both appellant and the accomplice "announced the gang's name during the robbery."  Finally, respondent points to Magana's opinion that a gang member will not commit a crime with somebody who is not part of his gang.  This crime occurred in Weedpatch Varrio territory so respondent contends it is reasonable to infer appellant and his accomplice were both members of that gang.  Respondent believes *Velasco* is distinguishable from the present matter and not applicable.

"The elements of the gang participation offense in section 186.22(a) are:  First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. [Citation.]"  (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130.)

9.

In *Velasco, supra,* 235 Cal.App.4th 66, the court of appeal analyzed whether a defendant could be convicted for street terrorism under section 186.22, subdivision (a), without evidence he acted with a member of his own gang. (*Velasco, supra,* 235 Cal.App.4th at p. 73.) *Velasco* rejected an argument that conviction could result if the defendant acted with any gang member. Instead, section 186.22, subdivision (a), requires a showing the defendant acted with a member of his or her own gang, unless it is shown the gangs were subsets of a primary gang and typically work together. (*Velasco*, *supra*, at p. 78.) Because there was no evidence in *Velasco* that the defendant committed any felonious act with another member of his own gang, the defendant's conviction for street terrorism was reversed. (*Ibid.*)

Here, appellant's accomplice was never identified. The record does not establish that he wore gang colors, made gang signs, or had gang tattoos. Although the accomplice called appellant by his gang moniker, "Danny Boy," we do not agree with respondent that this establishes the accomplice's gang membership beyond a reasonable doubt. It is reasonably possible people outside appellant's gang used this moniker for appellant. We also cannot say beyond a reasonable doubt that the location of this crime establishes the accomplice's gang membership.

Zavaleta testified it was appellant who said "Weedpatch" would "take care" of her. Later, the prosecutor asked her to read an incident report to refresh her memory, and the following occurred:

> "[Prosecutor]: Does that refresh your recall as to whether or not the individuals that robbed you made reference to Weedpatch in a way other than threatening you, if you told somebody, what would happen?
>
> "[Zavaleta]: Yes.
>
> "[Prosecutor]: What was it that you recall them saying about Weedpatch?
>
> "[Zavaleta]: That this is on Weedpatch, and they would take care of me if I say anything."

Magana testified that if a person said "Weedpatch" to a victim during a crime, that indicated the Weedpatch Varrio gang participated in the crime. It is unclear from this record, however, whether Zavaleta meant both men individually made that statement, if "they" referred to the gang, or if she collectively assigned that statement to both men. We cannot say beyond a reasonable doubt Zavaleta's vague testimony establishes the accomplice was a Weedpatch Varrio gang member, especially when she previously testified it was appellant who made this statement.

Magana opined a gang member will not take somebody who is not part of his gang to commit a crime. He based this opinion on his training, experience and speaking with gang members. A person may testify as an expert if he has special knowledge, skill, experience, training or education pertaining to the topic at issue. (Evid. Code, § 720, subd. (a).) An expert may express an opinion on a subject which would assist the jury if it is sufficiently beyond a common experience. (Evid. Code, § 801, subd. (a).) However, an expert's opinion is not given more credence or integrity than the facts underlying the opinion. Conjecture, surmise or a guess may not form the basis for an expert witness's opinion. (*People v. Jones* (2013) 57 Cal.4th 899, 951; *People v. Vang* (2011) 52 Cal.4th 1038, 1046.)

Magana's opinion in this regard is speculative. It is not reasonable to opine that a gang member would never commit a serious crime with a non-gang member. Further, as appellant points out, it is reasonably possible a member of one gang could commit a serious felony with a member of a different gang. As such, we cannot say beyond a reasonable doubt that the accomplice's presence establishes his membership in appellant's gang despite Magana's opinion to the contrary.

Viewing the record in the light most favorable to the judgment, the evidence is insufficient to establish that appellant's accomplice was a member of Weedpatch Varrio. We cannot say the evidence supporting the conviction for street terrorism is reasonable, credible and of solid value such that a reasonable jury could have found appellant guilty

11.

beyond a reasonable doubt. The requirement under section 186.22, subdivision (a), was not met showing appellant acted with a member of his own gang. Accordingly, appellant's conviction for street terrorism is reversed.

## **DISPOSITION**

The conviction under count 4 is reversed. The trial court shall prepare an amended abstract of judgment, which shall be forwarded to the appropriate authorities. The judgment is otherwise affirmed.