Filed 12/31/14  In re Marcus J. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MARCUS J., A Person Coming Under the Juvenile Court Law. | A141065 |
| THE PEOPLE, Plaintiff and Respondent, v. MARCUS J., Defendant and Appellant. | (Contra Costa County Super. Ct. No. J13-01306) |

Appellant Marcus J. appeals from a February 4, 2014, dispositional order of the juvenile court following a sustained finding that he committed robbery with a firearm use enhancement.  On appeal, Marcus challenges the court's finding on the enhancement, primarily arguing it was unsupported by substantial evidence, but also asserting five additional arguments.  We conclude that none of his contentions has merit, and we affirm.

**BACKGROUND**

The District Attorney for the County of Contra Costa filed a Welfare and Institutions Code section 602 petition alleging that Marcus committed one count of second degree robbery (Pen. Code, §§ 211/212.5, subd. (c)),[1] with an allegation that he personally used a firearm.  (§ 12022.53, subd. (b).)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

Following a contested jurisdictional hearing, the juvenile court sustained the robbery allegation and firearm use enhancement.  It adjudged Marcus a ward, and ordered him committed to the Orin Allen Youth Rehabilitation Facility for a nine-month mandatory program.

Marcus timely filed a notice of appeal.

**The Evidence At The Jurisdictional Hearing**

The first witness at the jurisdictional hearing was victim Christian L., who testified as follows regarding the incident:

On November 30, 2013, 17-year-old Christian arranged through Facebook to sell A. L., whom he did not know, a pair of shoes.  Christian and A. met in front of Christian's house in Brentwood at about 7:30 p.m. that evening.  Marcus accompanied A.  Christian brought two pairs of shoes to show A., and A. purchased one of them for $100.  After completing the transaction, Christian went inside, and A. and Marcus left.

Around 10:40 p.m., A. texted Christian that he was in the area, and wanted to buy the other pair of shoes.  Christian met with A., who was again accompanied by Marcus, about a block from Christian's house.  Christian brought the shoes in a box, and when A. asked to try them on, Christian handed him the box.

As A. tried on the shoes, he asked Christian for the time.  Christian took out his phone from his pocket, checked it, and told A. the time.  While A. put the shoes back into the box, Marcus pulled out what appeared to be a black pistol, held it to Christian's chest, and said, "Give me everything."  Christian was scared and gave Marcus his cell phone.  Marcus asked Christian where the money was, and Christian responded that he did not have it with him.  Marcus and A. ran off with Christian's shoes and cell phone.  Christian did not see what Marcus did with the weapon.

Christian went to the police station a few days later to report the incident.  There, he viewed a photo lineup, and circled Marcus's picture, telling the officer he was 60 percent sure Marcus was the person with the gun.  The police never recovered the weapon.  At the hearing, Christian identified Marcus as the assailant with the gun.

Christian further testified that he was not familiar with guns, and had never

2

handled a firearm. He stated that he had handled a BB or pellet gun in the past, but did not know what kind of pellet gun it was. He also testified that he was aware that sometimes such guns can look very realistic. Christian knew the difference between a revolver and a pistol, and described the gun Marcus had during the incident as a pistol, although he did not know for certain whether Marcus's weapon was a BB gun or an actual gun. Christian testified that Marcus's gun was the source of his fear and that he was worried Marcus was going to shoot him. Defense counsel showed Christian a photo of what counsel described as a "pistol," and the following exchange occurred:

"Q: [Christian], when the pistol was pulled out, you looked at it; right?

"A: Yes.

"Q: And that's how you knew it was black?

"A: Yes.

"Q: And that was the source of your fear; correct?

"A: Yes. [¶] . . .

"Q: I'm handing you what's been marked as Defense Exhibit A for identification. "Does that look like the pistol?

"A: I couldn't tell you. I don't know. I don't remember.

"Q: Does it look similar?

"A: Yes."

The exhibit contained a written description identifying the object as a pellet gun. On the prosecutor's objection, the court stated it would not consider that description and admitted only the photograph on the limited basis of Christian's testimony that it looked similar to the gun used by Marcus.

Brentwood Police Detective George Aguirre interviewed Marcus at the police station on December 3, 2013. Officer Aguirre testified that during the interview, Marcus provided him with the following version of events:

Marcus went to A.'s house in Antioch on the afternoon of November 30, 2013, and they decided to buy a pair of shoes from a teenager who lived in Brentwood. Their friend, Kenny, drove them to Brentwood and dropped them off near Christian's house.

A. then called Christian to tell him they were outside. Christian came out of his house with a pair of shoes and showed them to A. and Marcus, and A. purchased them. After the sale, Marcus and A. left and returned to Antioch.

Later that evening, Marcus and A. got together and decided they wanted to get a second pair of shoes from Christian without paying for them. They again obtained a ride from Kenny. While they were in the car, Kenny handed Marcus a gun. Marcus claimed it was not a real handgun, but a "C02 type BB gun." One of them called Christian, and they met him away from his house. When Christian gave A. the pair of shoes to try on, Marcus pulled out the gun, placed it on Christian's chest, and demanded Christian give him "everything." A. ran off with the shoes, and Marcus took off running with Christian's cell phone.

**The Juvenile Court's Order**

After the close of evidence, Marcus argued that the firearm use enhancement could not be sustained since Christian did not know if Marcus had a real gun or a pellet gun, and there was evidence, through Marcus's statement to the police, that he used a pellet gun.

The court rejected Marcus's argument, finding "beyond a reasonable doubt that [Marcus] . . . committed . . . second degree robbery," and finding true the firearm use enhancement under section 12022.53, subdivision (b). In reaching this conclusion, the court relied on *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 (*Monjaras*), which, among other things, held as follows: "a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm." (*Id*. at p. 1437.) Applying *Monjaras*, the juvenile court reasoned: " '[T]he victim's inability to say conclusively that the gun was real and not a toy does not create a reasonable doubt as a matter of law that the gun was a firearm.' [¶] I find here with the display of the gun, the object, I'll call it, I guess, and the words used and the conduct of the defendant clearly indicated that it was reasonable to—to a fact finder to find and for the victim to assume that this was a weapon and should

4

engender fear of injury and bodily harm, and that's what this statute, I think, is designed to punish. So by the same standard, I find the [section] 12022.53 allegation to be true."

## MARCUS'S CONTENTIONS ON APPEAL

Seeking to overturn the jurisdictional finding that he used a firearm in the commission of a robbery, Marcus presents six contentions, some of which are difficult to take seriously. The contentions are these: (1) he was denied due process because there was insufficient evidence to support the court's true finding on the firearm enhancement; (2) the juvenile court erred by relying on *Monjaras*; (3) the prosecutor committed misconduct by arguing that the court should base its factual finding on *Monjaras*; (4) the court violated Marcus's right to proof beyond a reasonable doubt by applying the wrong standard of proof on the enhancement; (5) the court erred by misinterpreting the purpose of the enhancement statute; and (6) Marcus was denied the effective assistance of counsel to the extent his trial counsel did not fully preserve an objection to the court's consideration of the *Monjaras* decision or the prosecutor's misconduct.

## DISCUSSION

### Substantial Evidence Supports The Court's Finding On The Firearm Use Enhancement

Marcus first challenges the juvenile court's ruling on the firearm enhancement, arguing that there is insufficient evidence that the item Marcus pointed at Christian was a firearm.

In attacking the sufficiency of the evidence supporting the court's ruling, Marcus assumes a daunting burden: "The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases." (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) "If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary conclusion. [Citation.] The appellant

5

has the burden of showing the finding or order is not supported by substantial evidence. [Citation.]" (*In re Megan S.* (2002) 104 Cal.App.4th 247, 250–251.)

Section 12022.53, subdivision (b) generally provides that any person who, in the commission of a felony, personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in state prison for 10 years. (See § 12022.53, subd. (b).)[2] As used in that section, " 'firearm' means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion." (§ 16520, subd. (a).) Under this provision, the firearm need not be operable or loaded for the enhancement to apply. (§ 12022.53, subd. (b).) In contrast, a BB or pellet gun is defined in section 16250 as "any instrument that expels a projectile, such as a BB or a pellet, not exceeding 6mm caliber, through the force of air pressure, gas pressure, or spring action, or any spot marker gun." (§ 16250.) A BB gun or a pellet gun is not a "firearm" for purposes of a sentence enhancement under section 12022.53. (*People v. Dixon* (2007) 153 Cal.App.4th 985, 1001 (*Dixon*); see *Monjaras*, *supra*, 164 Cal.App.4th at p. 1435.)

At the hearing, Christian testified that after he pulled out his phone to tell A. the time, Marcus "pulled a gun out," pointed it to Christian's chest, and told him, "Give me everything." Christian stated that he could see the entire firearm and that it felt heavy. He testified that Marcus's gun was the source of his fear and that he was worried Marcus was going to shoot him. This evidence was sufficient to support the juvenile court's finding that Marcus used a firearm, as *Monjaras* demonstrates.

In *Monjaras*, *supra*, 164 Cal.App.4th 1432, defendant approached the victim and said, "Bitch, give me your purse," before pulling up his shirt to display the handle of a black pistol tucked in his waistband. (*Id.* at p. 1434.) After the victim turned over her wallet, defendant's accomplice pressed something against the victim's back and took her purse from her shoulder. (*Ibid.*) A jury convicted defendant of robbery, and found he

---

[2] Robbery is specified as a felony for the purposes of section 12022.53, subdivision (b). (§ 12022.53, subd. (a)(4).)

personally used a firearm.  (*Ibid.*)

On appeal, defendant sought reversal of the firearm use enhancement, pointing out that the "victim could not say whether the pistol in defendant's waistband was a gun or a toy," in claimed support of his argument that " 'there was no evidence of a gun presented to the jury to support an inference the weapon was real.' " (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1435.)  Rejecting the argument, the court concluded that "circumstantial evidence alone is used to prove the object was a firearm . . . because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack the expertise to tell whether it is a real firearm or an imitation.  And since the use of what appears to be a gun is such an effective way to persuade a person to part with personal property without the robber being caught in the act or soon thereafter, the object itself is usually not recovered by investigating officers." (*Id.* at p. 1436.)  Here, the evidence suggests that Marcus implicitly threatened to use the gun.  Faced with this threat, Christian had little opportunity to closely examine the object, but he nonetheless identified the weapon as a black pistol.

Marcus asserts that Christian's testimony "that [the weapon] looked similar to the picture of a pellet gun he was shown in court," combined with his statement that "he did not know whether [the weapon] was a BB gun or a real gun," demonstrates insufficient evidence because such evidence is based merely on "Christian's uncertainty about the true nature of the item Marcus held."  He thus argues that reliance on Christian's inability "to say what he saw, as proof that he saw a particular thing that was different from what he thought he saw, is nothing more than speculation or conjecture, and not substantial evidence."  This argument is unpersuasive.

Christian's inability to say conclusively that the gun was a real firearm and not a toy does not create a reasonable doubt, as a matter of law, that the gun was a firearm. (See *Monjaras*, *supra*, 164 Cal.App.4th at p. 1436.)  Marcus's own words and conduct in the course of the robbery are sufficient to support a rational fact finder's determination that he used a firearm.  (*Ibid.*)  When Marcus pointed the weapon at Christian's chest and

7

ordered Christian to "Give [him] everything," he in effect communicated that it was a firearm. "[W]hen as here a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm within the meaning of section 12022.53, subdivision (b)." (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1437.)

Marcus also argues that *Monjaras* is inapplicable because it only applies to factual situations where there is no contrary evidence that the weapon was anything but a firearm. Instead, Marcus contends that this case is more analogous to *Dixon*, *supra*, 153 Cal.App.4th 985. In *Dixon*, the court found that the prosecution did not prove the firearm enhancement because the evidence showed that the guns were BB guns or pellet guns and not real firearms.[3] Marcus argues that, as in *Dixon*, there is evidence in the form of his statement to Officer Aguirre that he had a "C02 type BB gun," supporting his position that he had a BB gun, not a firearm.

It is probably enough to note that the juvenile court did not have to believe Marcus. But beyond that, the question before us is whether there was substantial evidence to support the court's finding that Marcus used a firearm in the commission of the robbery, not whether there is evidence to the contrary. The court had the opportunity to consider this argument in conjunction with other evidence and nonetheless found Marcus guilty of the enhancement beyond a reasonable doubt. That finding is supported. Borrowing from the court's language in *Monjaras*, this case is one where Marcus was not engaged in a childhood game of cops and robbers; the robbery was real, and there was substantial evidence supporting the court's conclusion that the pistol he used was a real firearm, not a toy. (See *Monjaras*, *supra*, 164 Cal.App.4th at p. 1435.)

In an attempt to circumvent the court's reliance on *Monjaras*, Marcus argues that this evidence nonetheless raises inconsistent inferences that must be resolved in his favor.

---

[3] The court, however, did not specify the type of evidence that it relied on to make its determination. (*Dixon*, *supra*, 153 Cal.App.4th at p. 1001.)

Marcus claims that " 'where the facts supporting two inconsistent inferences stand in equipoise, judgment must go against the party with whom the burden of sustaining one of the inferences resides,' " a rule for which he relies on *People v. Kovacich* (2011) 201 Cal.App.4th 863, *People v. Tran* (1996) 47 Cal.App.4th 759, and *Pennsylvania Railroad Co. v. Chamberlain* (1933) 288 U.S. 333 (*Chamberlain*). Such reliance is misplaced.

As the People correctly note, this theory derives from *People v. Allen* (1985) 165 Cal.App.3d 616. In *Allen*, both defendants were at the murder scene, and two .32 caliber cartridges were found at the scene, which suggested that the victim's wounds were inflicted by the same gun. (*Id.* at p. 626.) The court found insufficient evidence to prove which one of the two defendants had personally held and used the gun that killed the victim, reasoning that "[s]ince the evidence of what happened in the kitchen proved at most a 50 percent probability that he was the user," the state's burden of proving that defendant personally used a weapon beyond a reasonable doubt was not met. (*Ibid.*) The court stated that this situation belonged " 'to that class of cases where proven facts given equal support to each of two inconsistent inferences; in which event, neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences against the other . . . .' " (*Ibid.*, quoting *Chamberlain, supra*, 288 U.S. at p. 339.)

The cases are inapplicable here, since there was no question of inconsistent inferences. This was simply a situation in which the victim testified that the weapon was a gun, the assailant claimed it was not, and the trier of fact made an implied finding that the assailant's testimony was not credible.

**The Juvenile Court Applied The Correct Legal Standard**

Alternatively, Marcus seeks reversal of the juvenile court's finding on the firearm enhancement based on *People v. Hunter* (2011) 202 Cal.App.4th 261 (*Hunter*).

In *Hunter*, *supra*, 202 Cal.App.4th 261, the jury found defendant guilty of robbery and burglary, and further found that he personally used a firearm. (*Id.* at pp. 264–265.) In connection with the enhancement, the trial court gave the jury the following pinpoint instruction, based on *Monjaras*: " 'When a defendant commits a robbery by displaying

9

an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm. The victim's inability to say conclusively that the gun was real and not a toy, does not create a reasonable doubt as a matter of law the gun was a firearm.' " (*Id.* at p. 267.)

On appeal, the court determined that the instruction was defective for two reasons. (*Hunter*, *supra*, 202 Cal.App.4th at p. 275.) First, it was unduly argumentative since it highlighted one of two reasonable conclusions the jury could reach from circumstantial evidence. (*Id.* at pp. 275–276.) Second, the instruction impermissibly lightened the prosecution's burden to prove the use allegation beyond a reasonable doubt. (*Id.* at p. 276.) The court concluded that "the giving of an instruction suggesting that evidence received by the court and properly before the jury is insufficient to create reasonable doubt about an issue the district attorney was required to prove, is manifestly impermissible." (*Id.* at p. 277.) The court observed that the fact the language was taken from *Monjaras* did not justify its use as an instruction because that case addressed the sufficiency of evidence and had nothing to do with jury instructions. (*Ibid.*) It explained: "As indicated, the proposition for which *Monjaras* stands, that '[c]ircumstantial evidence alone is sufficient to support a finding that an object used by a robber was a firearm' [citations] does not exclude the possibility that circumstantial evidence alone may be *insufficient* to support a finding that an object used by a robber was a firearm." (*Ibid.*)

Marcus argues that in relying on the same language as a basis for its factual determination, the court in essence improperly instructed itself on the law, then used that improper instruction as the basis for its decision. The argument is fatuous. The concerns in *Hunter* are inapplicable here because unlike a jury, the juvenile court would not reasonably understand the language in *Monjaras* to preclude a finding of reasonable doubt. Indeed, we presume the juvenile court knew, properly followed, and applied established statutory and case law. (Evid. Code, § 664; *People v. Scott* (1997) 15 Cal.4th 1188, 1221; *People v. Castaneda* (1975) 52 Cal.App.3d 334, 342.) And nothing in the court's statements indicate it misconstrued the statements in *Monjaras*, nothing to

10

doubt that the court applied the correct law.

**The Prosecutor Did Not Commit Misconduct In Arguing The Applicability of _Monjaras_ To The Court**

Marcus also argues that the prosecutor committed misconduct by arguing to the court that: (1) _Monjaras_ held that in a circumstantial evidence case, the fact that a gun was displayed, how it was displayed, and that it was used to implicitly threaten and instill fear in the victim to obtain their property is enough to support a true finding in a section 12022.53, subdivision (b) enhancement; (2) _Monjaras_ held that a victim's inability to say that the gun was real, and not a toy, does not create a reasonable doubt as a matter of law that the gun was not a firearm; and (3) based on the holding in _Monjaras_, there is more than enough evidence to support the enhancement.

Passing over the question of how arguing to a _court_ can be "prosecutorial misconduct," we note that defense counsel failed to timely object to the prosecutor's argument, barring a claim of misconduct on appeal. (_People v. Davis_ (1995) 10 Cal.4th 463, 537; _People v. Webb_ (1993) 6 Cal.4th 494, 533.)

Marcus's claim also fails on the merits. The applicable federal and state standards regarding prosecutorial misconduct are well established. Under California law, a prosecutor commits reversible misconduct if he or she makes use of " 'deceptive or reprehensible methods' " when attempting to persuade the trial court or jury and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. (_People v. Riggs_ (2008) 44 Cal.4th 248, 298.) Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights is not a constitutional violation unless the challenged action " ' "so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' " (_Ibid_.) Marcus has not demonstrated that the prosecutor did anything " 'deceptive' " or " 'reprehensible' " or that " ' "infected the trial with unfairness." ' "

**The Court Applied The Correct Standard of Proof**

Next, Marcus asserts that the court applied the wrong standard of proof in

11

applying *Monjaras* since that case did not "determine whether the prosecutor proved the enhancement beyond a reasonable doubt. Rather, it considered only whether there was sufficient evidence from which the jury could have inferred that the object used in committing the offense was a firearm, i.e., whether it 'may support a rational fact finder's determination.' "

As we best understand, Marcus's contention stems from the court's statement: "I find here with the display of the gun, the object, I'll call it, I guess, and the words used and the conduct of the defendant clearly indicated that it was reasonable to—to a fact finder to find and for the victim to assume that this was a weapon and should engender fear of injury and bodily harm, and that's what this statute, I think, is designed to punish." Marcus contends that this statement showcases the court's uncertainty as to the nature of Marcus's gun and its belief that all that was necessary was for it to be "reasonable" to find that the object was a gun. This interpretation is flawed.

In general, we presume the juvenile court applied the proper burden of proof in matters tried to the court. (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 914.) We agree with the People's argument that in stating "I have no trouble finding and I do find that by the standard of beyond a reasonable doubt that this was—this crime was committed," the court explicitly understood its duty to determine from the evidence whether the allegations in the petition were proved based on that standard. Moreover, in addition to relying on *Monjaras*, the juvenile court analyzed and considered all the evidence presented at the hearing to support its finding beyond a reasonable doubt.

**The Court Did Not Misinterpret The Firearm Enhancement Statute**

Marcus contends that the court misinterpreted the purpose of the enhancement statute. He argues that the court's statement "that the firearm enhancement is designed to punish people where the victim thinks defendant has a gun, and is thus afraid of bodily harm," is erroneous since the statute was meant to punish more severely those individuals who actually used a gun in the commission of a crime and not those who simply engender fear of bodily harm, or uses something the victim might assume is a gun. Marcus claims that the court incorrectly relied on its misinterpretation of the statute as a basis for its

12

findings. This argument misconstrues the court's words.

Section 12022.53, subdivision (b) applies whenever a gun is intentionally displayed in a menacing manner to help facilitate a crime. (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1059–1060.) The statute is "to be construed expansively, not narrowly," because the legislative intent is to impose longer prison sentences for persons committing felonies with a firearm. (*People v. Frausto* (2009) 180 Cal.App.4th 890, 898.) Whether a defendant used a firearm in the commission of a felony is for the trier of fact to decide. (*People v. Masbruch* (1996) 13 Cal.4th 1001, 1007.) The court's statement that "the words used and the conduct of the defendant clearly indicated that it was reasonable to—to a fact finder to find and for the victim to assume that this was a weapon and should engender fear of injury and bodily harm" correctly construes the statute because the question addressed was whether Marcus had a firearm at the time of the robbery.

**Marcus Was Not Denied The Effective Assistance of Counsel**

Finally, Marcus claims that to the extent trial counsel did not fully preserve Marcus's objections to the court's consideration of the *Monjaras* decision, or the prosecutor's misconduct, Marcus was denied the effective assistance of counsel in violation of the Sixth Amendment.

To demonstrate ineffective assistance, defendant must establish: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. (*People v. Huggins* (2006) 38 Cal.4th 175, 205-206 (*Huggins*); *Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 691–692 (*Strickland*).)

Marcus has failed to show deficient performance. As noted above, the court did not err by relying on *Monjaras*, and the prosecutor did not commit misconduct in arguing *Monjaras* to the court, so it was not deficient for counsel not to object. Since Marcus has not shown counsel's conduct was deficient, we need not address prejudice. (*Huggins*, *supra,* 38 Cal.4th at p. 206; *Strickland, supra,* 466 U.S. at p. 692.)

13

## DISPOSITION

The judgment is affirmed.

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Stewart J.

15